Joel A. DEL FRANCIA, Appellant,

v.

STANTHONY CORPORATION, a corporation, Appellee.

No. 16462.

United States Court of Appeals
Ninth Circuit.

May 2, 1960.

Rehearing Denied July 11, 1960.

White & Haefliger, H. Calvin White, Los Angeles, Cal., for appellant.

Mason & Graham, Collins Mason, William R. Graham, Los Angeles, Cal., Zimmerman & Kelly, Milford S. Zimmerman, Joseph P. Kelly, Jr., Los Angeles, Cal., for appellee.

Before BARNES, HAMLEY and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge.

We have before us a patent infringement case. Appellant sought a declaration of the validity of United States Letters Patent No. 2,812,706, treble damages against the appellee for the wilful infringement of said patent, and an injunction to restrain appellee from further infringement thereof. Appellee denied the validity of appellant's patent, the infringement thereof, and counterclaimed for declaratory judgment of the patent's invalidity. Trial was had without a jury, and judgment was rendered by the district court that the patent in suit was invalid, that each of the claims thereof was invalid and in no wise infringed by appellee. On this appeal appellant relies on 27 assignments of error.

Jurisdiction of the district court was based upon Title 28 U.S.C.A. § 1338. Jurisdiction of this Court was based upon Title 28 U.S.C.A. §§ 1291 and 1294.

Appellant is the owner of the patent in suit, which is entitled "Electrical Broiler". The patent is concerned with the problem of how to obtain a flame broiling effect on meat (to be distinguished from a radiant heat broiling effect) by means of electromechanical equipment, the aim being to enhance the use of such electrical broilers in homes and restaurants.[1] The teaching of the patent discloses that such an effect can be ob-

1. While heat radiation is necessary to cook the meat, a flame effect on the meat is necessary to give it a charcoal broiled taste. Prior to the patent, electrical broilers were in little demand commer- ially because, while they were capable of supplying the necessary heat to cook the meat, they could not compete with gas or charcoal broilers in that no flame was produced.

tained through the bringing into concert below a broiler grid of open formation an openly exposed electrical element (to supply the necessary heat to cook the meat) and a "flame creating means" encompassing a grease collector or receiver. This receiver is in such a position that the falling grease from the heated meat is collected by it, and is heated to its flash point by the heat from the electrical element. The result of this electrical heat ignition of the grease is the creation of flames which rise to the grid and sear the meat, thus giving it a charcoal broiled taste. Further, the patent teaches that the grease receiver is to be the conventional plate or baffle type grease receiver, heretofore always necessary in electrical broilers, but (and herein lies the asserted invention) said plate-like receiver is to be placed in such proximity to the electrical heating coil that the heat given off by the element will not only heat the meat, as in the conventional type electrical broiler, but will also heat to its flash point the grease trapped or collected on the tray, causing flashing of the grease into flame.

For purposes of this review, the major difference between the patented device and the accused device is that the accused device does not employ a flat metal grease collecting mechanism underlying an electrical heating element, but instead employs a bed of porous ceramic or refractory particles surrounding but not covering the electrical heating element. These particles are about the size of the conventional charcoal briquets. The accused broiler (with the exception of the electrical element) looks much the same as a home charcoal broiler.

We will first consider the issue of infringement. In doing so, our first analysis must be to determine the extent of the umbrella protection accorded appellant by the patent claims, and then to determine whether the accused device falls within the forbidden shade.

The general rules of patent claims construction are well settled. A patent is to be construed as a contract, with the intent of the parties uppermost so as to give effect to their legitimate expectations. Further, since letters patent are contracts, questions of construction are questions of law for the court. Coupe v. Royer, 1895, 155 U.S. 565, 574–575, 15 S.Ct. 199, 39 L.Ed. 263; Motor Wheel Corp. v. Rubsam Corp., 6 Cir., 1937, 92 F.2d 129; Solomon v. Renstrom, 8 Cir., 1945, 150 F.2d 805. The claims are a measure of the monopoly granted to the inventor, The Paper Bag Case, (Continental Paper Bag Co. v. Eastern Paper Bag Co.), 1908, 210 U.S. 405, 419, 28 S.Ct. 748, 52 L.Ed. 1122, and they can never be broader than the invention disclosed to the public. Finally, the specifications and drawings must be looked to in order to properly grasp the invention or explain any ambiguity in the claims. The specification may not be used to enlarge any claim, but can be used to limit any claim. While the claims must be read in the light of the disclosure of the specifications, this does not restrict the invention to the precise structure disclosed, but rather to the real invention as found in the specifications and drawings. Payne Furnace & Supply Co. v. Williams-Wallace Co., 9 Cir., 1941, 117 F.2d 823, certiorari denied, 1941, 313 U.S. 572, 61 S.Ct. 958, 85 L.Ed. 1530; Kugelman v. Sketchley, 9 Cir., 1943, 133 F.2d 426; Whiteman v. Mathews, 9 Cir., 1954, 216 F.2d 712.[2]

On this appeal appellant asserts that only claims 1, 4, 5 and 6 were infringed by appellee's accused broiler. The broadest claim is No. 1, which reads as follows:

"1. An electrical broiler comprising a housing, a horizontally extending grid overlying the upper interior of the housing, said grid including spaced cross members adapted to pass grease drippings downwardly therethrough from an edible supported thereon, an electrically ener-

---

**2.** Additional cases on patent claims construction are collected in Walker on Patents (Deller's ed., 1937) Sec. 261.

gized heating element directly underlying the grid and having open formation to pass said grease dropping from the grid and for passing flames upwardly therethrough to said grid, said element being openly exposed to and unprotected from contact by said dropping grease, and flame creating means including a grease collector presenting an extended grease receiving surface area from which flames are adapted to rise, said means extending in such underlying proximity to said element and said grid that heat from said element will ignite grease deposited on said surface area and said flames will rise to said grid." [3]

It is to be noted that the "flame creating means" is characterized as: "a grease collector presenting an extended grease receiving surface area from which flames are adapted to rise." [4] No further description of the flame creator, as a "means" element rather than a "structural" element, is provided in the claim, but in the disclosure, the drawings (albeit only illustrative) describe only a flat metal grease collector, and the specifications refer only to a flat metal plate or metal baffles.

In dealing with a "means" element in a machine, however, because of the inherent difficulty, it is all the more important to construe that element in light of the disclosure. An inventor of an improvement "cannot by the mere use of the word 'means' appropriate any and all kinds of mechanism or devices which may perform the specified function, or any other mechanism or device than that which is described in the patent or * * * its mechanical equivalent". Ford Motor Co. v. Gordon Form Lathe Co., 6 Cir., 1937, 87 F.2d 390, 392. See also Engineering & Research Corp. v Horni Signal Corp., 2 Cir., 1938, 98 F.2d 682, certiorari denied 1938, 305 U.S. 645, 59 S.Ct. 149, 83 L.Ed. 416, and Stearns v. Tinker & Rasor, 9 Cir., 1958, 252 F.2d 589, 597–598, dealing with the construction to be accorded a "means" element in a patent claim.

Since the patent does not describe or show any other structural construction for the creation of flame from the grease which drips into the fire-box than that already alluded to, we are forced to the conclusion that a limitation must be read into the claims that the flame creator claimed is a single flat plate or flat baffles which hold the entrapped grease in such proximity to the heating element that it flashes into flame. Since the disclosure is limited to this type of structure, the means element of the claim must be similarly so limited.

The starting point for any consideration of the issue of infringement must be Graver Tank & Mfg. Co. v. Linde Air Products Co., 1950, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097, where the criteria for determining infringement of patent claims are considered.[5]

---

3. Claim 4 adds to the basic invention the recitation of a support for the flame creating means. Claims 5 and 6 add the feature that the flame creating means is mounted for movement into and out of underlying proximity to the heating element and grid.

4. That this is a valid element of a claim, as against the argument of functionality, was settled in Stearns v. Tinker & Rasor, 9 Cir., 1958, 252 F.2d 589, 597–598: "Several recent cases (citations omitted) and writers (citations omitted) have construed Section 112 (of Title 35 U.S.C.). We construe the section to mean that while an *element* in a *claim* for a combination may be expressed as a means or step for performing a function without recital of structure, material or acts in support thereof; the structure, material or acts must be described in the *specification*, and if so described, the claim will be construed to cover that which is described and the *equivalents thereof*. But the structure need not as well be recited in the claim." (Emphasis in the original.)

5. Normally, the question of infringement is one of fact. In this case, however, since there was no dispute as to the construction of the patented broiler and the construction of the accused device, the question of infringement resolves itself into one of law, depending on a comparison between the patent claims and the accused device, and the correct application

■ It is clear on a first perusal that the accused device does not read word for word on the claim in the patent, for the reason that the claim grants protection to a flame creator consisting of a flat plate or flat baffles, and the accused device uses porous ceramic blocks.[6] This by no means ends the analysis, however, for courts have long recognized the doctrine of equivalents in order to secure for an inventor the rightful fruits of his invention.

■ In seeking to determine if the doctrine of equivalents is to apply, it is well to bear in mind the classic definition which requires the accused device to perform substantially the same function in substantially the same way to obtain the same result as that claimed for the patented item. Sanitary Refrigerator Co. v. Winters, 1929, 280 U.S. 30, 42, 50 S.Ct. 9, 74 L.Ed. 147.

■ In our view there is a substantial difference in the operation of the flame creating means or method employed by the patented device and the accused device in accomplishing the desired result. In the patented device the method of operation is to catch and hold the grease drippings on an impervious plate until they are heated to ignition temperature, at which point there is a flashing action as the grease bursts into flame.[7]

In the ceramic bed of the accused device much of the grease coming into contact with the ceramic particles is absorbed in the very porous cellular structure of the ceramic particles. When flaming commences, it continues in a gradual and sustained manner of burning similar to the flame of an oil wick lamp, rather than the flashing action of the patented device. This difference in operation is caused by the presence in the accused device of a different method of grease collection, the porous nature of which permits burning of a sustained nature.

We hold that there is no equivalency of operation between the patented device and the accused device because the principle of appellant's patent has not been appropriated by the appellee. Therefore, the accused device does not infringe upon the patented device.

■ Although we have reached the conclusion that that part of the judgment of the district court holding that the accused device does not infringe upon the patent must be affirmed, nevertheless, we have given consideration to that part of the judgment adjudging that the patent is invalid and void. From such limited review, we are unable to state that the patent is clearly invalid. Under such circumstances, we deem it unnecessary to pass upon the validity or invalidity of the patent. In our view the public interest does not require us to do so. Patent Scaffolding Co. v. Up-Right, Inc., 9 Cir., 1952, 194 F.2d 457, certiorari denied, 1952, 343 U.S. 958, 72 S.Ct. 1053, 96 L.Ed. 1357; Kemart Corp. v. Printing Arts Research Laboratories, 9 Cir., 1953, 201 F.2d 624.

The judgment contained the following declaration: "That said patent in suit No. 2,812,706 and each of the claims thereof is invalid and void and not infringed by defendant." A decision as to the validity of the patent should await a case which requires it. Therefore, the judgment is modified by striking therefrom the words "invalid and void and". As thus modified the judgment is affirmed.

---

thereto of the rule of equivalency. Kemart Corp. v. Printing Arts Research Laboratories, 9 Cir., 1953, 201 F.2d 624.

6. Appellee does not contend that the accused device does not read word for word on the elements of Claim No. 1 in respect to a housing, a grid, and an electrically energized heating element. Hence, for purposes of this review, we deal only with the "flame creating means" element.

7. Appellant concedes as much. At page 10 of his opening brief it is stated: "The new element and the result produced comprise flame creating means including a grease collector presenting an extended grease receiving surface extending in such underlying proximity to the electric element that heat from the element will ignite *grease deposited on the surface area of the collector* and flames will rise to the grid." (Emphasis supplied.)