Charles F. HANSEN, Appellant,

v.

Ottis M. COLLIVER and Floyd E. Fuller,
Appellees.

No. 16549.

United States Court of Appeals
Ninth Circuit.

Aug. 23, 1960.

Stephen S. Townsend, Donald J. De-Geller, Carl Hoppe and Townsend & Townsend, San Francisco, Cal., of counsel, for plaintiff-appellant.

Ottis M. Colliver, Eureka, Cal., in pro. per.

Floyd E. Fuller, Fortuna, Cal., in pro. per.

Before CHAMBERS, JERTBERG and KOELSCH, Circuit Judges.

JERTBERG, Circuit Judge.

In the district court appellant, as owner of United States letters patent No. 2,552,673 issued May 15, 1951, sought recovery of damages against the appellees for alleged infringement of patent, for injunctive relief, and for declaration of validity of said patent. Appellees denied the validity of appellant's patent and infringement thereof, and counterclaimed for damages alleged to have resulted from notices sent by appellant to appellees' customers alleging infringement of appellant's patent by such customers. Trial was had before the court without a jury, and at the conclusion of the trial appellant waived any claim for damages against the appellees on account of the alleged infringement. The district court by its judgment decreed the validity of appellant's patent, that said patent was not infringed by the construction or use of appellees' accused device, and dismissed appellees' counterclaim. Appellant appeals from that portion of the final judgment which holds his patent is not infringed by the construction or use of appellees' device.

The jurisdiction of the district court is predicated on 28 U.S.C.A. § 1338(a). This Court has jurisdiction to review the judgment under the provisions of 28 U.S.C.A. §§ 1291 and 1294.

The patent in suit is entitled "Means for Interchanging Cores in Wire Ropes." It teaches a simple way to economically

recore short lengths of wire rope. The utility of this invention springs from the fact that six-stranded wire rope (from 7/8 to 1¼ inches in diameter) which contains a hemp or fibre core and which has been used in the oil industry can be recorded with metal core and thereby be made useful in the lumber industry as a "choker" in the lifting of logs. Prior patents taught a cumbersome method of extracting the hemp core and inserting a metal core which was found not economically feasible for recoring short strands of wire rope.

The essential facts in the case are not in dispute. Appellant's patent discloses a wire rope recoring apparatus in which the wire rope is attached via a swivel to a tractor or truck and is pulled past a recoring station comprising a guide affixed to a stationary support and rigidly supporting a stationary pin. The pin, like a marlin spike, is inserted between the strands of the rope to spread them apart for extracting the hemp core out of the center of the rope as the strands are pulled around the pin. At the same time the pin provides a space between the strands so that the new steel core can be fed into the center of the rope. The rope is caused to rotate as it is drawn past the pin by the natural strand twist of the helix formation of the wire rope and is permitted to rotate by the swivel.

The appellees' device is likewise a wire rope recoring apparatus, consisting of a flat table top some three or four feet above the ground and supported on a frame. In the center of the table top is a vertical stationary pin which momentarily unwinds and spaces limited portions of the strands sufficiently to provide available spaces between the thus distended strands and extracting and completely withdrawing the fibre core and substituting the metal core into the spaces provided. The wire rope is pulled along the displacing pin by means of a tractor or truck to which the wire rope is attached via a swivel.

In the memorandum opinion of the district court[1] which, by order of the district court, constitutes its findings of fact and conclusions of law, it is stated:

"A comparison between it [appellees'] and the Hansen [appellant] patent makes it clear that the defendants have utilized the invention of plaintiff. It would baffle the ingenuity of the most skilled expert to show a substantial difference between the two machines. The essence of both is a pin or rod about which is drawn a length of cable by means of a swivel."

Elsewhere in the memorandum opinion appear statements to the effect that the two machines are substantially alike, that the appellees' device infringes the appellant's patent in substance, and that the appellees' device has appropriated the inventive idea sought to be embodied in the appellant's patent. In his memorandum opinion the district court concluded that the appellees' device did not literally infringe the appellant's patent and that the doctrine of equivalents was inapplicable.

The only claim of the patent which is in issue is Claim 1, which reads as follows:

"Means whereby a used wire rope with a fibre core may be partially transformed by removing said fibre core and replacing same with a new metal core comprising a stationary support having a guide through which said rope is drawn by force applied to said rope, and relatively fixed means on said guide for momentarily unwinding and spacing limited portions of the strands sufficiently that available spaces are provided between the thus distended strands for extracting and completely withdrawing said fibre core, and, while the spaces are available, inserting and feeding said new substitute core for the displaced fibre core."

The "guide" mentioned in the claim is not amplified therein. Its form and shape is not specified. In the memo-

---

1. Hansen v. Colliver and Fuller, D.C., 171 F.Supp. 803, 809.

randum opinion the district judge stated:

"* * * it appears that defendants' [appellees'] device is superior in its simplicity, doing away, as it does, with tubular guide," and

"The claim explicitly requires a '* * * guide through which said rope is drawn * * *'. Without a guide the Hansen patent, as described, would be inoperable. As a result, the guide may not be disregarded [citations omitted], but must be held to be an essential portion of the claim [citations omitted]. As the Hansen patent is not complete without the inclusion of a guide through which rope may be drawn, the claim must be limited to the device described [citations omitted], or to one which utilizes clear equivalents."

It appears clear to us from the quoted language that in construing the language appearing in Claim 1 relating to the guide that the trial court limited such language to a tubular or enclosed guide. It is our view that the trial court erred in this respect. In the first place, the words appearing in Claim 1 of "a guide through which said rope is drawn" do not compel the construction that the guide be tubular or enclosed.[2] In the second place, claims 3 and 4, which are

not in issue, specifically define the structure of claim 1 wherein "said guide is an open ended sleeve". Claims 5, 6 and 7 also require "an open ended sleeve". Thus appellant has defined and claimed his specific open ended sleeve in each of claims 3, 4, 5, 6 and 7, but has not required that his guide of claim 1 have any specific form. Moreover, the general statement of the invention makes no specific reference either to the guide sleeve or to its form. The general statement of "the preferred embodiment of the invention" merely calls for "an appropriate guide * * * through which the rope is drawn by force applied to the rope, the rope rotating as it is passed through the guide." It is only the more specific statement of the "preferred embodiment" which states that "The guide is in the form of a substantially cylindrical properly bored sleeve." The specification concludes with the statement that "Minor changes in the shape, size and arrangement of details coming within the field of invention claimed may be resorted to in actual practice if desired."

■ Claim 1 does not prescribe that the rope shall be guided by any particular means or that the guide be of any prescribed shape or form. It appears to us that the limitation of claim 1 by the trial court to a tubular or en-

2. Webster's International Dictionary, 2nd Edition, defines the word "through" (1) as a preposition (in part): "Primarily through expresses the general relation of passage from boundary to opposite boundary of anything, penetration to all parts, continuance to the end of a period, and instrumentality. The specific and derived uses are: 1. In at one side and out at the opposite side of; from end to end or surface to surface of, by passing into and across or along the interior; into and beyond in one direction, as toward an object placed opposite:— indicating a space, material, substance, or medium (of light or vision) which is penetrated in passage or extension to the farther side; as, to walk through a gate; to bore through a board; a bullet passed through his hat; to look at a star through a telescope; a road through the desert.

(2) as an adverb: "1. From one end or side to the other by passing into the inner part or space; as, to pierce a thing through; hence: a. Over the whole distance; all the way to a destination, often specif. without change or local stop or stopovers; as shipped through to Chicago. b. In diameter; as, a tree measuring twelve inches through. 2. From beginning to end; along the whole of a due course or process; as, to read a letter through; to pass a resolution through. 3. Quite to the end or conclusion; to the ultimate purpose; to full accomplishment; as, to carry a project through; to win through to wealth and fame. 4. Thoroughly; entirely; — except in dialectal use now only following an adjective or participle, as, wet through. Through satiate with the pleasures of this night. Heywood."

closed guide is contrary to the well established rule of construction that a broad claim will not be construed to contain limitations expressed in the more narrow claims. Smith v. Snow, 1935, 294 U.S. 1, 55 S.Ct. 279, 79 L.Ed. 721; Stearns v. Tinker and Rasor, 9 Cir., 1957, 252 F.2d 589; Cameron Iron Works, Inc. v. Stekoll, 5 Cir., 1957, 242 F.2d 17; Great Lakes Equipment Co. v. Fluid Systems, Inc., 6 Cir., 1954, 217 F.2d 613.

■ In our view the proper construction of claim 1 requires a "guide" but does not require a guide of any specified shape or form or that the rope shall be guided by any particular means. While we are inclined to disagree with the view of the district court that the table top of the appellees' device is not a guide and therefore does not literally infringe appellant's patent, we are wholly satisfied that the undisputed facts compel the application to this case of the doctrine of equivalents. The doctrine is applicable if the accused device performs substantially the same function in substantially the same way to obtain the same result as that claimed for the patented device. Sanitary Refrigerator Co. v. Winters, 1929, 280 U.S. 30, 42, 50 S.Ct. 9, 74 L.Ed. 147; Graver Tank & Mfg. Co. v. Linde Air Products Co., 1950, 339 U.S. 605, 70 S.Ct. 854, 94 L. Ed. 1097.

■ Normally, the question of infringement is one of fact. In this case, however, since the facts are not in dispute the question of infringement resolves itself into one of law, depending on a comparison between the patent claim in issue and the accused device, and the correct application thereto of the law of equivalency. Kemart Corp. v. Printing Arts Research Laboratories, 9 Cir., 1953, 201 F.2d 624; Del Francia v. Stanthony Corp., 9 Cir., 1960, 278 F.2d 745. See also United States v. Parke, Davis & Co., 1960, 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505.

The inventive idea set forth in claim 1 is to provide a means to recore wire rope by removing the hemp or fibre core and replacing it with a metal core. The inventive idea was appropriated by the appellees. The end result achieved under claim 1 and the appellees' device is the same.

Claim 1 provides for a stationary support to which is to be attached a guide of no specified shape or form, to which is to be affixed a means for momentarily unwinding and spacing limited portions of the wire strands so that the hemp or fibre core may be removed and the metal core inserted. The means set forth in the description and drawings is a spreading pin. The accused apparatus consists of a support in the form of a frame which supports a table top. In the center of the table top is a vertical stationary pin which momentarily unwinds and spaces limited portions of the wire strands so that the hemp or fibre core may be removed and a metal core inserted. In both instances the wire rope is pulled by force via a swivel along the displacing pin. Under claim 1 the wire rope is pulled through the guide, whatever its shape or form may be, and along the displacing pin. In the accused device the wire rope is pulled across the table top along the displacing pin. Under claim 1, the function of the guide, whatever its form or shape, is to keep the wire rope from slipping off the pin when force is applied to the rope via a swivel. The same function is performed by the table top since when force is applied to the wire rope the rope is pulled along or across the table top along the displacing pin.

■■ In our view the accused device performs substantially the same function in substantially the same way and obtains the same results as are embraced in claim 1 of the patent. It may be, as indicated by the trial court, that appellees' device is superior in its simplicity in the use of a table top instead of a guide. If the table top is an improvement it is nevertheless the equivalent of the guide and is merely a change in form. As stated by the district court in its memorandum opinion:

"A claim, however, does not limit the patentee to the exact mechanism

described, leaving the public at liberty to construct substantially identical copies of the patented machine by varying its form or proportions (White v. Dunbar, 119 U.S. 47, 7 S.Ct. 72, 30 L.Ed. 303), or to adopt mechanical equivalents for the machine, or portions thereof (Hobbs v. Beach, 180 U.S. 383, 21 S.Ct. 409, 45 L.Ed. 586)."

Under the facts of this case and the law applicable thereto, the appellant is entitled to a decree that the appellees' device infringes his patent, and to the injunctive relief sought. The portion of the judgment appealed from is reversed.