**Archibald D. L. HUTCHINSON et al.,**
**Appellants,**

v.

**PACIFIC CAR & FOUNDRY COMPANY,**
**Appellee.**

**No. 17652.**

United States Court of Appeals
Ninth Circuit.

July 2, 1963.

Lyon & Lyon, and John B. Young, Los Angeles, Cal., for appellants.

Helsell, Paul, Fetterman, Todd & Hokanson, Paul Fetterman, and William A. Helsell, Seattle, Wash., for appellee.

Before HAMLIN and DUNIWAY, Circuit Judges, and BOWEN, District Judge.

DUNIWAY, Circuit Judge.

Appellants Archibald D. L. Hutchinson and Coast Equipment Company sued appellee Pacific Car & Foundry Company for patent infringement. Pacific counterclaimed for declaratory judgment. After a trial to the court judgment was for Pacific, and appellants appeal that portion holding Claims Four through Eight of Patent No. 2,890,909 invalid and uninfringed.

Coast Equipment is wholly owned by Hutchinson and his wife, and is a licensee under Hutchinson's patent. It manufactures dump-truck bodies and dump-truck hoisting equipment. Pacific produces various types of trucks. The devices here involved relate to semi-trailers designed for hauling and dumping earth, ore and the like. These semi-trailers are towed by what the trade terms tractors, and dumped by utilizing the jackknifing effect between tractor and trailer resulting when the forward end of the trailer is elevated hydraulically while still hitched to the tractor. Certain models produced by Pacific since June 16, 1959, when Patent No. 2,890,909 issued to Hutchinson, are claimed to have infringed the patent.

### 1. *Appellants' Alleged Invention*

We think discussion of the issues will be somewhat clearer if we first set out what appellants contend they have invented. An obvious requirement of these dump rigs is that the semi-trailer be connected to the tractor in such a manner that the rigs can corner effectively. To this end a "fifth wheel," set in the tractor chassis, is employed. The top plate of the fifth wheel rotates about a vertical axis. Invention is said to enter into the manner in which the semi-trailer is connected to the fifth wheel.

The patent, according to appellants, describes a massive crossbeam with rigid arms extending rearward and attached at their ends to each side of the forward part of the dump body. The crossbeam supports at its opposite ends hydraulic hoisting devices which elevate the body of the semi-trailer for dumping. The crossbeam is affixed to the top plate of the fifth wheel by a hinge connection with the hinge pin horizontal and running crosswise of the body of the semi-trailer. This allows movement of the crossbeam and its arms, the ends of which rise with the trailer body during the dumping process. Controlled lateral oscillation between tractor and semi-trailer (that is, sidewise tilting of the trailer, independent of the tractor) is supposedly produced under either of two methods set forth in the specifications of the patent: (1) a pivot stud running from the top plate of the fifth wheel down into the truck chassis, and rotably fixed in a bearing at the downward end, the oscillation to be achieved by the looseness of this stud in its bearing (apparently envisioning that not only the dump body, crossbeam and arms would oscillate, but the fifth wheel as well); (2) instead of fixing the sleeve which carries the pin of the hinge connection fast to the top plate of the fifth wheel, mounting it in a yoke on pivots in right angle alignment to the sleeve of the hinge, the oscillation to be controlled by pads mounted on the top plate of the fifth wheel (thus allowing lateral oscillation of the dump body, crossbeam and arms, but not of the top plate of the fifth wheel). In substance, this is the familiar universal joint, with stops to limit the degree of lateral rotation. The meat of the patent, states appellants' brief, is "the massive crossbeam * * *, with its limited oscillation hinge connection to the fifth wheel, its rigid draft arms, and its support at its opposite ends for the body-lifting hoists. * * * "

By these elements appellants claim to have provided for three essential movements by the tractor connection—cornering, dumping, and a limited amount of lateral oscillation between tractor and trailer while they are traveling over rough ground—without sacrificing, through unlimited lateral oscillation, the stability which the weight of the tractor is said to impart to the semi-trailer while the latter is being dumped.

### 2. *The Scope of the Patent*

Claims Four through Eight of Patent No. 2,890,909 are as follows:

"4. In combination, a power driven truck, a rigid dump body with a supporting wheel assembly at its rear end including a horizontal axis about which the body turns in dumping, a fifth wheel mounted in the truck chassis having its top plate mounted to turn about a vertical axis, a rigid toggle fixed at its forward end by a transverse, horizontal hinge axis to the top plate of said fifth wheel; said toggle comprising a pair of laterally spaced and coextensive arms, a forward end member rigidly joining said arms at their forward ends; said arms being hingedly fixed at their rearward ends to the dump body by a horizontal hinge axis forwardly of said wheel assembly, and body hoisting means supported on said forward end member of the toggle and having a lifting connection with the forward end portion of the dump body; said toggle serving to guide the body vertically in its dumping movements and prevent the body hoisting means being subjected to body guiding strain.

"5. The combination recited in claim 4 wherein said forward end member of said toggle comprises a cross beam that extends beyond the opposite side limits of the dump body, and wherein the body hoisting means are mounted on the opposite ends of said cross beam.

"6. The combination recited in claim 4 wherein said forward end member of the toggle comprises a cross beam that extends at its ends beyond the opposite side limits of the dump body and is located rearward of the pivot axis whereby the toggle is hinged to said top plate, and wherein said body hoisting means comprises telescopic jacks that are mounted on the outer ends of said cross-beam.

"7. In combination, a motorized truck equipped with a fifth wheel having a top plate mounted for turning about a vertical axis, a rear end dump body having a support at its rear end for travel and for dumping, a horizontal cross-beam supported on said top plate with its opposite end portions extended to opposite sides of the dump body and multiple sleeve telescopic hoists mounted on the opposite end portions of said cross-beam and having lifting connection with the forward end portion of the dump body for dumping it.

"8. The combination of claim 7 wherein the cross-beam has pivotal mounting on said top plate adapting it for lateral tilting movement in opposite directions, and said dump body rests thereon in travel and means is provided on the plate for limiting the extent of said lateral tilting to that required to accommodate the connection between cross-beam and top plate to normal variations in the surface of the road way over which the truck travels."

█ The claims thus fall into two groups: Claim Four, with dependent Claims Five and Six, and Claim Seven, with its dependent Claim Eight. It is a truism of patent law that "the claims made in the patent are the sole measure of the grant. * * *" (Aro Mfg. Co. v. Convertible Top Replacement Co., 1961, 365 U.S. 336, 339, 81 S.Ct. 599, 601, 5 L.Ed.2d 592) And only in Claim Eight is there an explicit reference to provision for limited lateral oscillation.

The trial court found as to Claim Eight that it was impossible to determine the amount of lateral tilting of the dump body relative to the truck chassis without actual construction of the device and subsequent experimentation to see whether the amount of lateral tilting is "that required to accommodate the connection between cross beam and top plate to normal variations in the surface of the road way over which the truck travels." Accordingly, the court held Claim Eight invalid for failure to claim distinctly and with particularity the subject matter of the invention, as required by 35 U.S.C. § 112. Even were we to consider this finding erroneous, and error of such magnitude that we could reverse (see Bank v. Rauland Corp., 7 Cir., 1944, 146 F.2d 19, 22; Research Prod. Co. v. Tretolite Co., 9 Cir., 1939, 106 F.2d 530, 533), the trial court also found Claims Seven and Eight incomplete, through their omissions of draft arms; and concluded the claims were so vague, indefinite, and incomplete as to fail to comply with 35 U.S.C. § 112. We would be loath to disturb this conclusion, since Claim Seven is so broadly worded that it amounts to a claim of invention of the hydraulically-dumped semi-trailer, an enterprise in which, to say the least, the record shows that the patentee was preceded by some others. The lateral oscillation mechanism therefore would be part of the patent only if we were willing to read Claim Eight as dependent from Claims Four through Six, in clear violation of their language.

But there is an alternate route by which the lateral oscillation mechanism may perhaps be preserved to appellants. We are to read Claims Four, Five and Six in light of the specifications (see Bergman v. Aluminum Lock Shingle Corp., 9 Cir., 1958, 251 F.2d 801), and the specifications recite two methods of achieving

limited lateral oscillation, immediately after a description of the "transverse, horizontal hinge axis" employed in Claims Four through Six. We have stated that the specifications "may not be used to enlarge any claim * * *." (Del Francia v. Stanthony Corp., 9 Cir., 1960, 278 F.2d 745, 747); and when two groups of claims are made, the first silent as to a mechanism recited in the specifications and the second explicitly embracing it, it would seem an enlargement of the first to read into its unambiguous language the specified mechanism. However, since it does not affect the result, we will assume, without deciding, that Claims Four through Six disclose the lateral oscillation device.

### 3. *Invalidity*

The trial court held (in the alternative as to Claims Seven and Eight) that Claims Four through Eight were invalid because anticipated by the prior art, and for lack of invention. With one exception, we need discuss only the latter holding, with which we are in complete agreement.

In large measure the patent is an aggregation of old parts. Rigid fifth wheels are old in the art. As the trial court found, the use of a draft yoke with hydraulically dumped semi-trailers is similarly old. To the extent that the patent actually discloses a "massive crossbeam," a phrase that appears in appellants' briefs, not in the patent, one was used in the Athey PR-21, a dumping semi-trailer described in a printed publication and in public use here before the claimed invention by appellant Hutchinson and more than one year prior to his patent application. Hoisting means located near the ends of a crossbeam were employed in the Gramm dumping semi-trailer, on sale and described in a printed publication in this country in April, 1950. A horizontal hinge axis is disclosed by the Gramm semi-trailer, Fields Patent No. 2,846,267, and Harbers and Merchant Patent No. 2,794,673.

It is less clear from the record that the device for limited lateral oscillation is old. The trial court found that the Athey PR-21 dumping semi-trailer was the mechanical equivalent of the dumping semi-trailer disclosed by Claim Eight, and therefore anticipated Claim Eight. The Athey PR-21 was used with the Caterpillar DW-21 tractor, by means of an oscillating hitch connection. The undisputed testimony was that lateral oscillation on the Athey PR-21 was limited, to no more than 22 to 23 degrees from vertical, by cast stops on the hitch. "The doctrine (of equivalents) * * * is applicable if the accused device performs substantially the same function in substantially the same way to obtain the same result as that claimed for the patented device." (Hansen v. Colliver, 9 Cir., 1960, 282 F.2d 66, 69) We think that applicable to the limited oscillation device shown in Claim Eight. Moreover, lateral oscillation can be achieved as well by a ball and socket joint as by a longitudinal hinge. It is a little late to patent the ball and socket, and even later to patent a loose bearing. Claim Eight discloses no new or novel method of achieving lateral oscillation; it does not even describe a specific method of achieving such oscillation. In any event, there is nothing new in a universal joint. "Thus, disallowing the only * * * invention, the question is whether the combination can survive on any other basis. What indicia of invention should the courts seek in a case where nothing tangible is new, and invention, if it exists at all, is only in bringing old elements together?" (Great A. & P. Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 150, 71 S.Ct. 127, 129, 95 L.Ed. 162)

The answer which the Supreme Court gave in the cited case was that "the conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts in the accumulation of old devices patentable. * * * [T]his is not a usual result of uniting elements old in mechanics." (Id. at 152, 71 S.Ct. at 130) We are unable to see that any of the parts perform a different or additional function here, or that their combination pro-

duces unusual or surprising consequences for one schooled in the dump truck art. (See Griffith Rubber Mills v. Hoffar, 9 Cir., 1963, 313 F.2d 1; Pressteel Co. v. Halo Lighting Prod., Inc., 9 Cir., 1963, 314 F.2d 695.) Appellants argue hard that the combination solved the problem of stability during/dumping. Beyond appellant Hutchinson's own testimony and some statements in advertisements and patents, the record is silent as to whether stability in dumping was a problem; there is no showing that much of the prior art was unstable; and the trial court found as fact that appellee's accused devices, even though they had a limited oscillation connection, did not depend upon the tractors for their stability.

■ Claims Four through Eight of Patent No. 2,890,909 being invalid for want of invention, we need not reach the question of infringement. (Bergman v. Aluminum Lock Shingle Corp., supra.)

Affirmed.