Fred L. NELSON, Appellant,

v.

D. M. BATSON, Appellee.

No. 18426.

United States Court of Appeals Ninth Circuit.

Aug. 19, 1963.

Seaman & Reeves, and Charles H. Reeves, Coos Bay, Or., Buckhorn, Blore, Klarquist & Sparkman, and Joseph B. Sparkman, Portland, Or., for appellant.

Ramsey, Kolisch & Hartwell, M. H. Hartwell, Jr., and J. Pierre Kolisch, Portland, Or., for appellee.

Before JERTBERG and BROWNING, Circuit Judges, and JAMESON, District Judge.

BROWNING, Circuit Judge.

Nelson obtained a default judgment against Batson which declared Nelson's Patent No. 2,844,120, issued July 22, 1958, valid and infringed, and enjoined Batson from future infringement. No appeal was taken. Nelson subsequently filed a motion to hold Batson in contempt for violating the injunction. The District Court found no infringement, and dismissed the proceeding. This appeal followed.[1]

Nelson's patent disclosed an improved "boom boat," used to move logs in a log pond in lumbering operations. The boat construction claimed by Nelson combines four elements: (1) a hull with a well between bow and stern; (2) an outboard motor in the well with the propeller projecting beneath the hull; (3) a turntable in the well to which the outboard motor is fixed to permit rotation; and (4) a skeg, or enlarged keel, extending from the propeller to the stern.[2] Nelson's boat

---

1. In the state of this record we assume, as did the District Court, that as to Batson the Nelson patent is valid. See Royal Typewriter Co. v. Remington Rand, Inc., 168 F.2d 691 (2d Cir. 1948).

2. The claim allegedly infringed reads as follows:

"A boat construction comprising a hull having a bow and a stern, a well in said hull intermediate said bow and said stern,

is steered by turning the outboard motor, the turntable permitting rotation through a full 360 degrees.

Batson was charged with (1) direct infringement by making, using, and selling a completed boat, and (2) contributory infringement by selling a hull with a well between bow and stern.

1. Batson's completed boat has a hull with a well, and a skeg. It does not have an outboard motor affixed to a turntable in the well. Instead, Batson's boat has an inboard motor mounted on the deck, connected by a drive shaft to a gear housing over the well, which, in turn, is connected to a propeller shaft assembly in the well, the propeller projecting beneath the hull. The propeller shaft assembly rests on bearings in a stationary mounting fixed in the well. Steering is accomplished by turning the propeller shaft assembly.

The general principles to be applied in determining whether Batson's boat infringes Nelson's patent are beyond dispute.

■■ The statute requires that the patent application contain specifications which describe the invention in "full, clear, concise, and exact terms," and which conclude with "one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C.A. §§ 111, 112. The claims measure the patent monopoly,[3] and their language provides the standard against which infringement is initially to be determined.[4] Where, as here, the invention consists of a combination of old elements, the patent monopoly extends only to the combination claimed as required by the statute, and not to its parts; the patent is infringed only if all of the elements set forth in the claim are found in the accused device.[5]

These are not arbitrary requirements; they serve important and long recognized public interests. Precise claims are required, "so that the public may know what they are prohibited from doing during the existence of the monopoly, and what they are to have at the end of the term, as a consideration for the grant." Brooks v. Fiske, 15 How. (56 U.S.) 212, 214–215, 14 L.Ed. 665 (1853). They protect the public as well as other experimenters by making it possible to determine whether the applicant is claiming "anything that is in common use, or is already known, and to guard against prejudice or injury from the use of an invention which the party may otherwise innocently suppose not to be patented." Evans v. Eaton, 7 Wheat. (20 U.S.) 356, 434, 5 L.Ed. 472 (1822). Judicial expansion of the coverage of the patent beyond the words of the claims might confer a greater monopoly than was justified in light of the prior art or than the Commissioner intended to grant, and improperly inhibit experimentation by others.[6]

an outboard motor including a propeller, said outboard motor being disposed in said well and projecting down therethrough, with said propeller being disposed beneath said hull, a turntable mounted in said well to facilitate rotation of said outboard motor to position said propeller at the desired angle to the center line of the hull, said well being disposed forwardly of the longitudinal center of said hull, a depending skeg carried by said hull on the underside thereof immediately rearwardly of said propeller and in alignment with the center line of said hull, said skeg extending substantially from said propeller to said stern and cooperating with said propeller to effect maneuvering of said boat."

3. 2 Walker, Patents §§ 165, 256 (Deller ed. 1937, Supp.1962). See, e. g., Del Francia v. Stanthony Corp., 278 F.2d 745, 747 (9th Cir. 1960).

4. 3 Walker, supra § 450. See, e. g., Neff Instrument Corp. v. Cohu Electronics, Inc., 298 F.2d 82, 88 (9th Cir. 1961).

5. 3 Walker, supra § 461. See, e. g., Simons v. Davidson Brick Co., 106 F.2d 518, 522 (9th Cir. 1939). See also Power Curbers Inc. v. E. D. Etnyre & Co., 298 F.2d 484, 494 (4th Cir. 1962); Entron of Maryland, Inc. v. Jerrold Electronics Corp., 295 F.2d 670, 677 (4th Cir. 1961).

6. See, e. g., United Carbon Co. v. Binney & Smith Co., 317 U.S. 228, 232, 236, 63 S.Ct. 165, 87 L.Ed. 232 (1942);

To these requirements the doctrine of equivalents is a court-created exception—"an anomaly," logically inconsistent with the provisions of the statute and the public policy they reflect (Royal Typewriter Co. v. Remington Rand, Inc., 168 F.2d 691, 692 (2d Cir. 1948)), but nonetheless necessary to avoid rendering the patent "a hollow and useless thing," by permitting "the unscrupulous copyist to make unimportant and insubstantial changes and substitutions in the patent which, though adding nothing, would be enough to take the copied matter outside the claim." Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 607, 70 S.Ct. 854, 94 L.Ed. 1097 (1950).

The doctrine of equivalents is directed against those who seek to pirate a patented device with impunity by introducing "minor variations to conceal and shelter the piracy." 339 U.S. at 607, 70 S.Ct. at 856. "The essence of the doctrine is that one may not practice a fraud on a patent." By its terms, a patentee may treat as an infringer one who produces a device which, though not within the literal language of the claims of the patent, "performs substantially the same function in substantially the same way to obtain the same result"[7] as the claimed device, for the two devices are then in reality the same, differing only "in name, form or shape."[8] 339 U.S. at 608, 70 S.Ct. at 856.

■■ Since the purpose of the doctrine of equivalents is to give the inventor an opportunity to secure a just reward for his invention—an opportunity which he would otherwise be denied because of the failure of the language of his claim to include devices which were in fact the same as his own in function, means, and result—the degree of protection afforded beyond the language of the claims will vary directly with the value of the inventor's contribution to the art.[9] As the principle is commonly put, the inventor is entitled to a range of equivalents commensurate with the scope of his invention: broad if his invention is broad; narrow if his advance is a small one in a crowded field.[10]

With these principles in mind, we turn to the case before us.

As we have noted, the combination claimed by Nelson's patent includes "an outboard motor * * * disposed in said well," and "a turntable mounted in said well to facilitate rotation of said outboard motor * * *."[11] Since there

---

Schriber-Schroth Co. v. Cleveland Trust Co., 305 U.S. 47, 57, 59 S.Ct. 8, 83 L.Ed. 34 (1938); General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 369, 58 S.Ct. 899, 82 L.Ed. 1402 (1938); Permutit Co. v. Graver Corp., 284 U.S. 52, 60, 52 S.Ct. 53, 76 L.Ed. 163 (1931). Patent claims have been described as "word fences which exclude the public from the patented invention but also leave open that public domain which the patent may not protect." 19 Geo.Wash.L.Rev. 491, 492 (1950–51).

7. Quoting from Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 42, 50 S.Ct. 9, 74 L.Ed. 147 (1929). See, e. g., Hansen v. Colliver, 282 F.2d 66, 69 (9th Cir. 1960); Del Francia v. Stanthony Corp., 278 F.2d 745, 749 (9th Cir. 1960). See also Pursche v. Atlas Scraper & Engineering Co., 300 F.2d 467, 482 (9th Cir. 1961); Scherbatskoy v. United States Steel Corp., 287 F.2d 552, 558 (7th Cir. 1961).

8. Quoting from Union Paper-Bag Mach. Co. v. Murphy, 97 U.S. 120, 125, 24 L.Ed. 935 (1877).

9. Royal Typewriter Co. v. Remington Rand, Inc., 168 F.2d 691, 692 (2d Cir. 1948); 19 Geo.Wash.L.Rev. 491, 495 (1950–51).

10. 3 Walker, supra § 471. See e. g., Moon v. Cabot Shops Inc., 270 F.2d 539, 543 (9th Cir. 1959). See also Parmelee Pharmaceutical Co. v. Zink, 285 F.2d 465, 472 (8th Cir. 1961); International Latex Corp. v. Warner Bros. Co., 276 F.2d 557, 563–64 (2d Cir. 1960); Graham v. Cockshutt Farm Equip., 256 F.2d 358 (5th Cir. 1958); Steffan v. Len A. Maune Co., 234 F.2d 750, 753 (8th Cir. 1956).

11. Nelson's specifications and drawings do not suggest an enlargement of the meaning of this unambiguous language of the claim, assuming they might effectively do so. Nelson's specifications refer repeatedly to the "outboard motor" situated

is no outboard motor mounted on a turntable in the well of Batson's boat, Nelson could prevail only if the inboard motor fixed to the deck of Batson's boat and the propeller housing assembly journaled in the well were "equivalent," under the standards we have stated, to the elements of Nelson's patented combination omitted from Batson's construction. We agree with the District Court that they were not.[12]

The District Court properly concluded that Nelson's invention was "a minor improvement in a crowded field," and that the "range of equivalents" to which he was entitled was "at best * * * narrow." It appears from the references cited in Nelson's patent [13] that prior to Nelson's application his "well" had been disclosed by Dyer, Steele, Edwards, and Wilson, and, in substance, by Sharp; his outboard motor disposed in the well with propeller beneath the hull by Pedranti, Sharp, and Steele; his outboard motor rotatable through 360 degrees for steering purposes by Pedranti and Sharp; and his skeg by Dyer, Sharp,

within the well upon a turntable, and advantages are asserted for the patented combination based upon the relative low cost of motors of this type and the ease and speed with which they may be removed, repaired, and replaced. Nelson's drawings depict, unmistakably, a typical outboard motor fixed to a turntable centered in the well.

12. "A finding of equivalence is a determination of fact." Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 609, 70 S.Ct. 854, 856 (1950). See also Entron of Maryland Inc. v. Jerrold Electronics Corp., 295 F.2d 670, 677 (4th Cir. 1961). Some decisions of this Court have found an exception where the "facts" are not in dispute (Hansen v. Colliver, 282 F.2d 66, 69 (9th Cir. 1960), and cases cited). Compare Pursche v. Atlas Scraper & Engineering Co., 300 F.2d 467, 482 (9th Cir. 1961); Moon v. Cabot Shops Inc., 270 F.2d 539, 545 (9th Cir. 1959); and, generally, Judge Duniway's enlightening discussion in Lundgren v. Freeman, 307 F.2d 104, 113–115 (9th Cir. 1962). In any event, we are satisfied that the District Court's determination of lack of equivalency was correct if a conclusion of law, and supported by the record if a finding of fact.

13. Six of the ten prior patents cited as references are included in the records:

Dyer, No. 2,699,138, Jan. 11, 1955, showed a well through which a shaft and propeller were suspended, the propeller being set parallel to the center line of the hull. The propeller housing did not rotate, steering action depending on the reversal of the direction of movement of the propeller. Dyer's specifications and drawings disclosed skegs designed to protect the propeller.

Pedranti, No. 2,633,817, April 7, 1953, disclosed a cylindrical casing fixed over a hole in the bottom of the boat, an outboard motor mounted on and projecting through a turret had on the casing, the turret head having an annular flange resting on the top edge of the cylinder, permitting rotation of the turret head and attached outboard motor through 360 degrees to reverse the direction of the boat.

Sharp, No. 2,522,545, Sept. 19, 1950, showed a "shell or drum [which] forms substantially a 'well' in the bow of the boat through which the outboard motor is mounted for inboard operation. The outboard motor when arranged for inboard operation is free to be revolved through 360 degrees for steering * * *." Rotatability is achieved by journaling the tubular rotatable housing of the outboard motor in a flange in a fixed structure in the well. A skeg appears in the drawings, and is described in the specifications as designed to protect the propeller.

Pridgen, No. 2,507,544, May 16, 1950, disclosed a skeg-like "keel" to protect propellers.

Steele, No. 2,451,781, Oct. 19, 1948, disclose "a well or vertical opening for the accommodation of a propeller driving shaft and its housing," and a motor "positioned above [the] well" and "detachably connected"; drawings showed a conventional outbroad motor fixed in the well.

Edwards, No. 2,156,938, May 2, 1939, described "a boat constructed with a well" in which there was a "propeller gear housing mounted that it can be revolved for the purpose of steering the boat * * *." The power source was inboard, away from the well, and connected with the propeller gear assembly by a drive shaft.

Wilson, No. 1,774,956, Sept. 2, 1930, showed a removable rudder-shaped propelling and steering unit set in a well on bearings, rotatable through 360 degrees for steering. The position of the power source is not specified.

and Pridgen.[14] In these circumstances, to expand Nelson's patent monopoly appreciably beyond the precise combination of old elements which he claimed would reward him disproportionately, and at the same time unfairly limit those like Batson who had different combinations of the old elements to offer which reflected minor advances of their own.[15]

Batson's combination of the familiar elements was inferior to Nelson's in some respects, but superior in others. Nelson's easy removability for repair or replacement were sacrificed; but there was evidence that Batson attained greater ease in steering, better general balance, and increased buoyancy. Batson's boat could be steered without moving the motor itself; the motor could be located at a point on deck away from the well to offset the weight of the remaining gear; and the smaller hull opening required to accommodate the propeller shaft assembly alone, and not the motor as well, reduced the loss of buoyancy.

■ Batson achieved maneuverability by means which differed significantly from Nelson's in respects relevant to the usefulness of the two devices for the purpose both were intended to serve. Since this is so, it would be of no conse-quence that the function performed and result obtained by the two constructions were in all respects identical.[16]

Considering both boats in relation to the prior art, the two constructions cannot be regarded as in reality the same, differing only in form. It would exaggerate Nelson's contribution, and minimize that of Batson, to suggest that Batson's boat was a fraud upon Nelson's patent.

■ Nelson asserts that the "heart" of his invention is the enhanced maneuverability resulting from the relationship between a rotatable propulsion unit and a skeg located as stated in his claim, and that the location of the motor does not affect this relationship. Nelson contends that Batson should not be permitted to appropriate the "heart" of Nelson's invention simply by altering another, unessential, element. "We can only answer, 'that there is no legally recognizable or protected "essential" element, "gist" or "heart" of the invention in a combination patent.'" Entron of Maryland, Inc. v. Jerrold Electronics Corp., 295 F.2d 670, 677 (4th Cir. 1961), quoting Aro Mfg. Co. v. Convertible Top Replacement Co., 365 U.S. 336, 345, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961).[17]

14. Although the question of validity is not before us, it is appropriate to note that the differences between Nelson's combination and those of Pedranti, Sharp, and Steele are slight; and that if an outboard motor fixed to the deck connected to a rotatable propeller shaft assembly in a well were indeed equivalent to an outboard motor on a rotatable turntable in a well, it would be difficult to identify the inventive quality of Nelson over either Edwards or Wilson.

15. Nelson argues that his patented combination was primary and hence entitled to broad protection because the prior art references reflected boat constructions used as fishing craft, ferries, barges, and for surfing and other purposes, but none for moving and sorting logs, a field in which Nelson's boat was an innovation. But to extend Nelson's patent monopoly on this basis would be inconsistent with the settled doctrine that use of an old device for a new and analogous purpose is not invention. 1 Walker, supra § 43.

16. 3 Walker, supra §§ 467, 469. See e. g., Air Devices, Inc. v. Air Factors, Inc., 210 F.2d 481, 483 (9th Cir. 1954). See also North Star Ice Equip. Co. v. Akshun Mfg. Co., 301 F.2d 882, 886 (7th Cir. 1962); Graham v. Cockshutt Farm Equip., 256 F.2d 358, 359 (5th Cir. 1958).

17. "The fact that an unpatented part of a combination patent may distinguish the invention does not draw to it the privileges of a patent. That may be done only in the manner provided by law. However worthy it may be, however essential to the patent, an unpatented part of a combination patent is no more entitled to monopolistic protection than any other unpatented device." Mercoid Corp. v. Minneapolis-Honeywell Co., 320 U.S. 680, 684, 64 S.Ct. 278, 280, 88 L.Ed. 396 (1944). See also 3 Walker, supra § 461.

By the clear and unequivocal language of his claim, an outboard motor mounted on a turntable in the well was an element of the combination for which Nelson sought and obtained a patent. He cannot now be heard to say that this element was not in fact part of his invention.

■ If the "essence" of Nelson's invention was indeed the relationship between the rotatable propulsion unit and the skeg, Nelson should have claimed that combination separately. "The inventor must 'inform the public during the life of the patent of the limits of the monopoly asserted, so that it may be known which features may be safely used or manufactured without a license and which may not.'" General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 369, 58 S.Ct. 899, 902, 82 L.Ed. 1402 (1938), quoting Permutit Co. v. Graver Corp., 284 U.S. 52, 60, 52 S.Ct. 53, 76 L.Ed. 163 (1931). For "businessmen are certainly entitled to know when they are committing an infringement." Aro Mfg. Co. v. Convertible Top Replacement Co., 365 U.S. 336, 358, 81 S.Ct. 599, 611, 5 L.Ed.2d 592 (1960) (Black, J., concurring).[18]

Reading Nelson's claim, Batson would naturally suppose that an outboard motor on a turnable in the well was an integral part of the patented combination.[19] Batson was entitled to conduct his own experimentation on the premise that a new combination without these elements would be beyond the reach of Nelson's monopoly.

■ From "the context of the patent, the prior art, and the particular circumstances of the case"[20] we conclude that Batson's construction was not the "equivalent" of Nelson's, and did not infringe the claim of the latter's patent.

■ 2. Both in the District Court and before us the issue of contributory infringement arising from the sale by Batson of a hull with a well between bow and stern resolved itself into the question of whether the hull was "suitable for substantial noninfringing use." 35 U.S. C.A. § 271(c). Batson contended that the hull could be used in two noninfringing ways: (1) completing it in the fashion of Batson's completed boat; or (2) clamping an outboard motor to the edge of the well. Nelson contended: (1) as a matter of law Batson's completed boat infringed Nelson's patent claim; and (2) as a matter of fact clamping an outboard motor to the edge of the well was not a practical use and had not occurred. Since we agree with Batson on the first issue, we do not reach the various procedural and substantive questions which Nelson has raised in connection with the second.

Affirmed.

18. "It is for that reason that the patent statutes require applicants to define with particularity and claim without ambiguity the subject matter which is regarded to be an invention. * * * It has long been settled with respect to combination patents that the monopoly rights extend only to the patented combination as a whole and that the public is free to appropriate any unpatented part of it, 'however important.'" 365 U.S. at 358, 81 S.Ct. at 611.

19. A conclusion which would be reinforced by the emphasis which the specifications placed upon the advantages of this element of the patented combination.

20. Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 609, 70 S. Ct. 854, 94 L.Ed. 1097 (1950).