CS&M, INCORPORATED, a California corporation, Plaintiff-Appellant,

v.

COVINGTON BROTHERS TECHNOLO-GIES (formerly Covington Brothers), a California corporation, and Covington Brothers Building Systems, Inc., a Delaware corporation, Defendants-Appellees.

No. 81–5225.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 4, 1982.

Decided May 27, 1982.

Hayden A. Carney, Christie, Parker & Hale, Pasadena, Cal., for plaintiff-appellant.

Richard F. Carr, Gausewitz, Carr, Rothenberg & Edwards, Orange, Cal., argued, for defendants-appellees; Allan Rothenberg, Gausewitz, Carr, Rothenberg & Edwards, Orange, Cal., on brief.

Before HUG, TANG, and PREGERSON, Circuit Judges.

PREGERSON, Circuit Judge:

Appellant CS&M, the plaintiff below, sued Covington Brothers Technologies and Covington Brothers Building Systems, Inc. for allegedly infringing its patent on a certain type of prefabricated wall panel. The trial court granted summary judgment for the defendants, holding that as a matter of law their wall panel did not infringe appellant's patent. We affirm.

(I) Infringement is ordinarily a question of fact. *Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 616 F.2d 1315, 1322 (5th Cir. 1980). When there is no dispute as to the construction of the patented device and the accused device, however, the question of infringement becomes one of law. *Hansen v. Colliver*, 282 F.2d 66, 69 (9th Cir. 1960); *Del Francia v. Stanthony Corp.*, 278 F.2d 745, 748 n.5 (9th Cir. 1960). The district court in the instant case treated the infringement question as one of law.

Appellant contends that the district court erred because there was a dispute as to the construction of the accused device, appellees' wall panels. Appellant says the dispute concerned "the significance, function and effect of certain of the elements" of those panels, the "outside wires." This alleged dispute, however, does not really concern the *structure* of the accused product at

all. Rather, it goes to the question of whether the outside wires in appellees' panel act as the equivalents of the bonding agent described in appellant's patent. That is a matter not of the "construction" of appellees' panel, but of the legal characterization of that construction. Therefore, we reject appellant's contention that the district court erred in treating the infringement issue here as a question of law.

■ (II) The patent that appellant contends was infringed is U.S. Patent No. 3,879,908 ("the '908 patent"). Both parties have agreed that only claim 3 of that patent need be considered, since it is the broadest of the patent claims. Claim 3 describes a prefabricated wall panel in which insulative material, in the form of plastic strips, is inserted into the spaces defined by a wire lattice and then held in place by a "bonding agent." [1]

Appellees manufacture a wall panel of their own, which they assemble by stacking up plastic insulation strips and wire trusses, compressing the stack so as to embed the trusses in the insulation strips, and then welding "outside wires" to the trusses to complete the wire lattice. Thus, no separate, adhesive substance need be employed as a bonding agent to hold appellees' panel together. Appellant, however, asserts that the term "bonding agent," as used in the '908 patent, is not limited to a *separate* substance used as such an agent, and that appellees' panel does contain a bonding

agent. For this reason, appellant maintains, appellees' wall panel literally infringes claim 3 of the '908 patent.

The wording of claim 3 seems to indicate that the "bonding agent" spoken of there is meant to be a separate substance—it is said to be "disposed between the insulative elements and the adjacent lattice elements." *See* emphasized language in note 1 *supra*. Appellant insists, however, that the words "bonding agent" apply to any mechanism or force that causes one thing to be held in place relative to something else. Since *something* in appellees' panel holds the insulation strips in place relative to the wire lattice, appellant argues, that panel must contain a bonding agent. [2]

We disagree. Appellant defends its position by relying on isolated dictionary definitions of "bond" and "agent," but this reasoning totally ignores the context in which the term "bonding agent" is used. It would also lead to absurd conclusions—for example, that the bars on a prison cell constitute a "bonding mechanism" because they are a mechanism which "bonds," in the dictionary sense of "restraining from liberty." Appellant's approach, indeed, would compel the conclusion that *any* modular building panel containing individual strips of insulation inside a wire lattice will be covered by the '908 patent, even one that embodies a completely new and revolutionary technique for holding the insulation in place.

1. Claim 3 reads as follows:

A prefabricated modular building panel as an article of manufacture comprising a three-dimensional lattice fabricated of a plurality of slender elongated metal elements arranged to define a pair of substantially parallel spaced major lattice surfaces, side and end lattice edge surfaces, and a plurality of strut members traversing the interior of the lattice and interconnecting the major surfaces thereof to define a plurality of passages within the lattice open at at least one end thereof to one of the edge surfaces, and thermal insulating filler material disposed within the lattice to extend from side to side and from end to end of the lattice, the filler material being held in position within the lattice by the elements defining the lattice, the filler material being comprised of a plurality of insulative ele-

ments defined by a rigid cellular foam material positioned in the passages through the open ends of the passages to be disposed wholly within the lattice, *and a bonding agent disposed between the insulative elements and the adjacent lattice elements for fixing the insulative elements in position within the lattice.*
(Emphasis added.)

2. Appellant has difficulty pinpointing just what it believes the "bonding agent" present in appellees' panel is. In its opening brief, appellant pointed to the "compressive forces" resulting from the compression of the insulation strips and wire trusses; in its reply brief, appellant instead singles out the "outside wires" welded on to the trusses after the compression has taken place.

Appellant also contends the trial court erred in focusing on the language of the patent specifications, which it says merely detailed the preferred practice of the invention. But the Supreme Court, although emphasizing that the claims of a patent define its scope, has said: "[I]t is fundamental that claims are to be construed in the light of the specifications and both are to be read with a view to ascertaining the invention." *United States v. Adams,* 383 U.S. 39, 49, 86 S.Ct. 708, 713, 15 L.Ed.2d 572 (1966) (citations omitted). Hence "it is permissible to examine the specifications to understand properly the scope of a patent claim," especially if a term used in the claim is capable of two interpretations. *Del Mar Engineering Laboratories v. Physio-Tronics, Inc.,* 642 F.2d 1167, 1172 (9th Cir. 1981).[3]

We conclude that appellees' panel does not literally infringe Claim 3 of the '908 patent.

(III) Even a device whose structure does not correspond precisely to the claims of a patent may be found to infringe the patent under the "doctrine of equivalents." The trial court, though, found that appellees' product was not the equivalent of appellant's because it contained no element equivalent to the "bonding agent" of appellant's '908 patent. Appellant disputes the finding that no element in appellees' panel is equivalent to its "bonding agent."

■ An accused device will be found to be the equivalent of a patented invention " 'if it performs substantially the same function *in substantially the same way* to obtain the same result.' " *Graver Tank & Manufacturing Co. v. Linde Air Products Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 556, 94 L.Ed. 1097 (1950), *quoting Sanitary Refrigerator Co. v. Winters,* 280 U.S. 30, 42, 50 S.Ct. 9, 13, 74 L.Ed. 147 (1929) (emphasis added). The emphasized language is vital, because the mere fact that the accused de-

vice performs the same function or accomplishes the same result as the patented device will *not* establish infringement. *Mobil Oil Corp. v. Filtrol Corp.,* 501 F.2d 282, 292 (9th Cir. 1974). Here, however, appellant's arguments, designed to show that either the "compressive forces" in appellees' panel or the "outside wires" welded on to the wire trusses therein are the equivalent of appellant's "bonding agent," run afoul of this principle.

Appellant's argument boils down to this: the "compressive forces" and the "outside wires" hold appellees' panel together, and thus *perform the same function* that the "bonding agent" performs in the invention described in the '908 patent; hence, the "compressive forces" and the "outside wires" must be equivalent to the "bonding agent." Plainly, this argument reads the emphasized language out of the *Graver Tank* equivalence test, violating our holding in *Mobil Oil Corp., supra.* In fact, appellees' panel dispenses with the need for a separate bonding agent—which, as discussed above, is what the '908 patent called for—and thus achieves the same result as appellant's patent but by a different method. Hence, appellees' device is not equivalent to the invention covered by the '908 patent.

(IV) Appellant's other contentions merit only brief replies.

(1) The district court's alleged failure to properly consider the Weismann and Wagner declarations does not constitute failure to take account of the state of the prior art, since neither of these declarations contains relevant information about the state of the prior art.

(2) In concluding that equivalency was a legal issue in this case because the "method of constructing" the rival devices was not disputed, the district court did not contra-

---

**3.** Moreover, even the language of Claim 3 itself, without reference to the specifications, is naturally interpreted as referring to a separate element as "bonding agent." One simply would not, in ordinary discourse, speak of the "compressive forces" appellant finds in appellees' panel as "disposed between the insulative ele-

ments and the adjacent lattice elements": these forces are internal to the lattice and the insulation. Nor are the "outside wires" in appellees' panel located *between* the insulation and the lattice—they form part of the lattice itself.

dict its assertion that the '908 patent covered a product, rather than a process. "Method of construction" can mean either the process by which a device is put together or the structure of the resulting device, and the district court's remarks, taken in context, make it clear that the court was using that term in the latter sense.

(3) The district court asserted that the '908 patent was a "paper patent" and an "improvement patent," and that both sorts of patents are entitled to only a small range of equivalents. We are not convinced that either assertion played any role in the judgment, but in any case both assertions are quite correct. First, appellants can hardly deny that the '908 patent is an improvement patent—the patent itself states that "[t]he invention pertains to *improvements* in modular building panels," and goes on to describe how the new invention incorporates the principal features of previously-patented panels while adding some new, improved features. Second, contrary to what appellants claim, "paper patents"—those, like the '908 patent, that have not been put into commercial production—do receive only a narrow range of equivalents. *See, e.g., Lockwood v. Langendorf United Bakeries, Inc.,* 324 F.2d 82, 88 (9th Cir. 1963); *Richard Irvin & Co. v. Westinghouse Air Brake Co.,* 121 F.2d 429, 430 (2d Cir. 1941) (per curiam); *Dillon Co. v. Continental Supply Co.,* 98 F.2d 581, 587 (10th Cir. 1938).[4]

For the reasons stated above, the judgment of the district court is AFFIRMED.

---

**4.** *Continental Paper Bag Co. v. Eastern Paper Bag Co.,* 210 U.S. 405, 28 S.Ct. 748, 52 L.Ed. 1122 (1908), on which appellant relies, merely held that "paper patents" are entitled to equitable protection against infringement—it did *not* hold that such patents are to be accorded as broad a range of equivalents as patents that have been put into production.