56 CCPA

**Application of Walter SEIFRIED and Ludwig Klenk.**

**Patent Appeal No. 8109.**

United States Court of Customs and Patent Appeals.

March 6, 1969.

James E. Bryan, Washington, D. C., for appellants.

Joseph Schimmel, Washington, D. C. (Leroy B. Randall, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, ALMOND and BALDWIN, Judges.

BALDWIN, Judge.

This appeal is from the Patent Office Board of Appeals decision affirming the examiner's rejection of claims 1–4, all of the claims in appellants' application,[1] as unpatentable over Goldman et al.,[2] taken alone, or in view of either Winter[3] or Pangonis et al.,[4] under 35 U.S.C. § 103.

## THE INVENTION

The invention relates to a heat-shrinkable, seamless polyethylene terephthalate tubular foil, as well as the process for its manufacture, and is reflected in appealed claims 1 through 4 which read:

1. A process for the manufacture of shrinkable, seamless tubular foils of polyethylene terephthalate, wherein a tubular foil of said terephthalate is extruded, set by cooling, brought to a temperature of 80–85°C, and within this temperature range is extended in length to 3–3½ times the original and in diameter to 4–5 times the original and then cooled, with maintenance of the required extending force, at least to 70°C.

2. The process of claim 1, wherein a polyethylene terephthalate is employed having a softening point of 257–266°C and an intrinsic viscosity of 0.45–0.68, determined in 1% by weight solution in a mixture of 3 parts by weight of phenol and 2 parts by weight of tetrachlorethane.

3. The process of claim 1, wherein the extension of the tube in diameter is to 4–4½ times the original.

4. A polyethylene terephthalate tubular foil which upon dipping in water of 90°C or higher shrinks by at least 30% of its length and also of its width.

1. Serial No. 174,708, filed February 21, 1962, for "Process for the Manufacture of Shrinkable Seamless Tubular Foils of Polyethylene Terephthalate."

2. U. S. Patent 3,141,912, issued July 21, 1964, on an application filed August 24, 1960.

The foils are disclosed as useful in the packaging of foodstuffs and other goods, since irregularly shaped articles may be packaged in a skin of plastic film conforming to their shape without creasing or folding. To be practical, shrinkage of the foil should be occasioned "at temperatures below 100°C * * * by dipping into hot water," and "should not take place at temperatures below 60°C." The specification further states that "[i]n practice a minimum shrinkage of 30% has proved to be desirable or necessary."

## THE REFERENCES

The Goldman et al. patent discloses a method of improving the properties of thermoplastic, polymeric tubular films wherein a thermoplastic polymeric material, such as polyethylene terephthalate, is extruded in the form of a tubular sheet which is quickly cooled. The tubular sheet is then "heated to a temperature within its orientation temperature range," which is defined as "the temperature range in which molecular orientation of a polymeric film may be effected" and is stated in Table I as *85–110°C for polyethylene terephthalate*. At this temperature, the tubular sheet is expanded to a diameter preferably 2–10 times the original and stretched to a length preferably 2–10 times the original; the preferred elongation range *for polyethylene terephthalate* is given in Table III as *2–6 times the original dimensions*. The tubular sheet is then cooled while the stretching forces are maintained. Shrinkage of the polymeric films produced by this process is discussed, and shrinkage data is given for the five working examples but not for polyethylene terephthalate.

3. U. S. Patent 2,995,779, issued August 15, 1961.

4. U. S. Patent 2,851,733, issued September 16, 1958.

Winter relates to a process for improving the properties of extruded polyethylene terephthalate film by stretching it under heat; the preferred specific stretch ratios are 3.3–4.5 times its original width and 3.0–6.0 times its original length.

The Pangonis et al. patent relates to a process of stretching polyethylene terephthalate in two directions. As disclosed, "the extent of stretch may be as high as 5X or greater in one or both directions" where X is the original dimension of the film; and Fig. 6 shows stretch ratios of 4.5 times the original for both directions at 84°C.

## THE REJECTION

The examiner rejected claims 1–4 as unpatentable over Goldman et al., taken alone, or in view of either Winter or Pangonis et al., under 35 U.S.C. § 103, stating as summarized by the solicitor:

[T]hat Goldman et al. showed a process for the production of polyethylene terephthalate tubing which had been extruded, set by cooling, heated to 85–110°C, stretched to from 2–6 times its original diameter and length while it was in the heated condition, and finally cooled while the stretching forces were maintained * * *.

Although the examiner's application of Winter and/or Pangonis et al. is not apparent from the abbreviated record before us, the board stated:

Goldman et al. show a process substantially as recited except for the specific increase in length and diameter as recited in the claims. * * * [Goldman et al.'s] elongation range encompasses the range recited by appellants with respect to polyethylene terephthalate. The temperature employed also encompasses the 85°C. temperature at which the material is stretched. The material so treated is capable of shrinkage * * *.

We are in accord with the Examiner's position that it would be ob-

vious in view of this teaching of Goldman et al. to stretch the material within the range recited in the claims and that the resulting product would be shrinkable to a material extent in both its dimensions as a result of such stretching. Winter also shows it is old to stretch such a material transversely at least 3.3 times and longitudinally from 3–6 times with resulting improvement in the product. In Example I, the product is stretched slightly greater in the transverse direction than in the longitudinal direction. Pangonis et al. further illustrate the stretching of a film of the type claimed substantially the same amount in each direction and that the resulting product is heat shrinkable.

Inasmuch as appellants have failed to urge method claims 2 and 3 as being patentably distinct from claim 1, claims 2 and 3 stand or fall with claim 1.

## OPINION

■■ We agree with the board that claims 1–4 are unpatentable under 35 U.S.C. § 103 and find no error in the board's decision.

Appellants argue that, although Goldman et al. teaches of shrinkage of certain films, there is no suggestion concerning *shrinkage* of *polyethylene terephthalate* films treated in accordance with the *Goldman et al.* process. However, a "disclosure in a reference is not limited to its specific illustrative examples, but must be considered as a whole to ascertain what would be realistically suggested thereby to one of ordinary skill in the art." In re Uhlig, 376 F.2d 320, 323, 54 CCPA 1300, 1304 (1967). We feel that Goldman et al. suggests the shrinkage of polyethylene terephthalate, as also does Pangonis et al.

Appellants' Rule 132 affidavit attempting to show that operation outside of the specific claimed ranges does not result in a film shrinkable to a practical extent is insufficient, we feel, to overcome the rejection. The affidavit fails

to sufficiently describe the test apparatus for comparison with that described in Goldman et al. Thus, the affidavit fails to establish that Goldman's process does not produce such a shrinkable tubular foil.

The Patent Office refusal to supply appellants with a Rule 107 affidavit is not in error here since the references of record support the examiner's statement that polyetheylene terephthalate films are commonly known to be shrinkable. Thus, since the knowledge relied upon by the examiner is not his personal knowledge, but rather common knowledge in the art, an affidavit under Rule 107 is not required. See In re Uhlig, supra.

The board's decision is affirmed.

Affirmed.