Kenneth REINER and Frank A. Klaus, Jr., d/b/a Kaynar Company and Kaynar Mfg. Co., Inc., Plaintiffs-Appellees,

v.

The I. LEON CO., Inc., Defendant-Appellant.

No. 69, Docket 28100.

United States Court of Appeals Second Circuit.

Argued Oct. 17, 1963.

Decided Nov. 15, 1963.

John M. Lee of Fulwilder, Patton, Rieber, Lee & Utecht, Los Angeles, Cal.

(William R. Liberman, New York City, on the brief), for plaintiffs-appellees.

Maxwell E. Sparrow of Sparrow & Sparrow, New York City, for defendant-appellant.

Before MEDINA, HAYS and MARSHALL, Circuit Judges.

HAYS, Circuit Judge.

This is the second time this patent litigation has been before this court. In the former appeal, Reiner v. I. Leon Co., 285 F.2d 501 (2d Cir. 1960), cert. denied, 366 U.S. 929, 81 S.Ct. 1649, 6 L.Ed.2d 388 (1961), we upheld the validity of Claim 3 of plaintiffs' Reissue Patent No. 23,163, and held that Claim 3 was infringed by the device then being manufactured by defendant. The present case involves a new device which defendant thereafter commenced to manufacture and sell and which plaintiffs claim also infringes their patent. Upon reference to David S. Kane, Esq., the special master conducting the accounting for the prior infringement, the new device was found to present a full response to all the elements in Claim 3 and therefore to infringe. This is an appeal under 28 U.S.C. § 1292(a) (4) from orders of the district court sustaining the findings of the special master and directing him to bring the accounting forward to include sales of the new device.

■ We hold that the master's finding that defendant's new device infringes plaintiffs' Claim 3 was clearly erroneous, and therefore we reverse the district court's orders.

The patent is for a "clamp" (commonly called a hair clip) used to maintain "formed curls" in a woman's hair. The clamp consists of two connected metal plates, one superimposed on the other, and so constructed as to form "jaws" at one end and handles at the other. Spring tension normally maintains the jaws in closed position, but pressure on the handles causes the plates to revolve around the point of connection so that the jaws open to permit the insertion of a hair curl, which is held fast by the jaws when the handles are released.

■ Plaintiffs' clamp, defendant's former clamp (adjudicated an infringement in the prior action), and defendant's accused clamp (the subject of this appeal) are substantially identical in many respects—the location of the connecting point, the shape of the handles, the pronged construction of the jaws, and the use of a resilient extension struck out of one of the two metal plates to provide the necessary spring tension. The differences are in the means of connection and the design of the spring. Defendant does not contend that the difference in means of connection—which is slight—is alone sufficient to require a finding of noninfringement. But since a combination patent such as plaintiffs' reissue patent cannot be infringed except by a device which contains every one of the elements of the patented device, Aro Mfg. Co. v. Convertible Top Replacement Co., 365 U.S. 336, 344, 81 S.Ct. 599, 5 L.Ed. 2d 592 (1961); Guide v. Desperak, 249 F.2d 145 (2d Cir. 1957); Nelson v. Batson, 322 F.2d 132 (9th Cir. 1963), the claimed difference in the design of the spring requires a judgment of noninfringement if it is so pronounced that we must conclude that the spring in the accused clamp does not respond to the disclosures in plaintiffs' patent.

The differences in construction of the springs are difficult to convey without having recourse to the diagrams and physical exhibits that are part of the record on appeal. However, we essay a brief verbal description. In each of the three clamps (i. e. plaintiffs' clamp, the clamp previously held to infringe and the presently accused clamp) the spring is provided by a tongue of metal, denominated in the art a "resilient extension," struck out of one of the plates toward the handle end and extending past the point of connection. In plaintiffs' clamp the spring is struck out of the upper plate and extends forward in a pronounced bow-shape from the end of the handle around the point of connection and between the prongs of the jaws, being at-

tached to the bottom of the lower plate by a hook so that the jaws, and the plates, are pulled together. In defendant's infringing clamp the spring was struck out of the bottom plate and extended in a bow forward from the end of the bottom handle through a slot in the upper handle around the point of connection coming to rest on the top of the upper plate and thus pushing the two plates and the jaws together. In defendant's accused clamp the spring is struck out of the bottom plate and extends rearward from the jaw side of the connecting point through a slot in the upper plate over the connecting point and then through the handle so that pressure is exerted, by means of a hook at the end of the spring, on the bottom and rear of the handle part of the upper plate. It is this pressure which would force the plates apart but for the connecting means that hold the jaws together.

The shape of defendant's new spring is the gist of the issue here. The hook end has a bow form, but it is not claimed that this constitutes a response to the bow-shape of plaintiffs' spring. The spring itself is relatively straight. True, when the jaws are closed there is a barely discernible bow in the spring, which increases when the jaws are opened. But any spring will bow slightly under tension, and some tension is required to keep the jaws firmly closed.

Because he found defendant's spring to be bow-shaped, the master made no finding that a bow-shaped spring is an essential element of the patented combination, though he apparently assumed that it is. Since Claim 3, set out in full below,[1] provides for "a resilient integral extension of bow-form struck from its material and extending around the axis of [the]

rocking connection," it is clear that a bow-shaped spring is required. Plaintiffs do not contend otherwise. They argue that defendant's new spring is "of bow-form" since, "while the initial degree of bowing may be slight, the degree of bowing is not critical and is not specified in Claim 3." They admit that, in their preferred embodiment described above, the spring is considerably more bowed, but maintain that the term "bow-form" appearing in the claim is not limited to the degree of bow in their preferred embodiment.

■ Were we required to base our decision solely on the words of the claim we would be disinclined to hold that defendant's spring is bowed rather than straight. To do so would practically eliminate the class of straight springs. When, as here, the court has serious doubts that there is an infringement, it is proper to consider prior art and other background material in order to determine the scope of the patent. See Moto-Mower Co. v. E. C. Stearns & Co., 126 F.2d 854 (2d Cir. 1942). In this case such an examination fully confirms our conclusion that the accused clamp does not infringe.

In their reissue oath plaintiffs indicated that the reason for seeking reissue was that they had recently discovered certain patents not previously disclosed and that they believed that the original patent was invalid because of the failure to include the limitations set forth in the reissue claims. Regarding Claim 3, plaintiffs stated:

"Original Claim 3 calls for a resilient integral extension engaging the other member and urging the jaws toward their closed position. This

1. "In a clamp for clamping a flat curl on one's head, the combination of two superimposed elongated plates extending longitudinally with each other, having integral handles and clamping jaws, said plates having correlated means integral respectively with said plates, including spur means integral with one of said plates, and socket means on the other plate receiving the spur means, and cooperating therewith to hold said plates against shifting relatively to each other, and forming a rocking connection between said plates, one of said plates having a resilient integral extension of bow-form struck from its material and extending around the axis of said rocking connection, engaging the other plate and constantly urging the jaws toward their closed position."

is shown in Bergen 2,415,331, Atchley 1,591,732, Halket 1,387,978, Cahn 769,336, Williamson 362,134, Porter 206,896 as well as the British patent 10,972. However, none of these patents disclose the extension in a bow extending around the axis of the rocking connection."

Both the Cahn and the British (Turnor) patents show springs that, like defendant's spring, are struck out of the lower plate, extend rearward from a point in the lower plate in front of the rocking axis, and engage the bottom of the upper plate toward the rear of the handle. Both springs bow in use. Having distinguished their bow-spring from the spring in the Cahn and Turnor patents, plaintiffs cannot now claim that defendant's spring, which follows the Cahn and Turnor teachings, is a bowed spring.

This structural difference between plaintiffs' spring and defendant's new spring is paralleled by a functional difference. In their specifications for the reissue patent and in their briefs before this court in the former appeal, plaintiffs stressed that their bow-spring performed the dual functions of maintaining the jaws in contact and of forcing the plates together at the connecting point. The spring in defendant's former clamp performed both functions; but its new spring forces the plates apart, disintegration of the clamp being prevented only by the restraining action of the connecting means. Without more, this difference in function might not be determinative, but taken in conjunction with the disclosures in the prior art it is conclusive.

 As a rule "the claims made in the patent are the sole measure of the grant. * * *" Aro Mfg. Co. v. Convertible Top Replacement Co., supra, 365 U.S. at 339, 81 S.Ct. at 600–601, 5 L.Ed. 2d 592. In appropriate circumstances a court may determine that an alleged infringer has utilized the principle of the invention—that is, that the accused device is "equivalent" to the patented device—and find infringement even though the accused device is outside the literal scope of the claim. Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950). However, we do not understand plaintiffs to argue that the doctrine of equivalents is applicable here. Nor could they. The range of equivalents allowed is small when the advance is a small one in a crowded field. International Latex Corp. v. Warner Bros. Co., 276 F.2d 557, 563–564 (2d Cir.), cert. denied, 364 U.S. 816, 81 S.Ct. 47, 5 L.Ed.2d 47 (1960); Nelson v. Batson, 322 F.2d 132, 135 (9th Cir. 1963). Thus, the prior art that limits the scope of plaintiffs' claim also prevents a finding of equivalence. In view of this determination we need not consider whether, as defendant argues, plaintiffs are estopped by their representations in the reissue oath and in the briefs in the prior appeal from claiming a broad range of equivalents. See Note, The Interplay of the Doctrines of Equivalents and File Wrapper Estoppel, 29 Geo.Wash.L.Rev. 917 (1961).

Admittedly defendant's clamp is commercially indistinguishable from plaintiffs', and it may seem that the difference in spring construction is so slight that a finding of noninfringement is inequitable. But, as Judge Hand said in the former appeal, in distinguishing a prior patent in order to find plaintiffs' patent valid:

"the closing spring is altogether different. In such small and fragile devices slight divergences may be determinative." 285 F.2d at 504.

██ ██ Because the policy of the law is to construe strictly the grant of a patent monopoly, there is nothing wrong or immoral in any sense for a manufacturer deliberately to create an article on the basis of the prior art in order to avoid infringement. Eastman Oil Well Survey Co. v. Sperry-Sun Well Surveying Co., 131 F.2d 884, 887 (5th Cir. 1942).

Reversed and remanded.