**Application of Howard L. HOPKINS.**
**Patent Appeal No. 7326.**

United States Court of Customs and Patent Appeals.
April 8, 1965.
Rehearing Denied June 17, 1965.

James T. Hoffman (William T. Estabrook, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (S. Wm. Cochran, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

MARTIN, Judge.

This appeal is from the decision of the Board of Appeals affirming the examiner's rejection of claims 1 through 6 of appellant's application serial No. 831,589, filed August 4, 1959, entitled Blind Fastener, as unpatentable over the prior art. Claim 7, the only other claim, stands allowed.

The construction of appellant's blind bolt is best understood in connection with Figures 3 and 4 of the application reproduced below:

FIG. 3

FIG. 4

The drawings show the use of the fastener to secure together members E and F, E being an outside member accessible to the workman while F is inaccessible to him. Fig. 3 shows the fastener after it is inserted into aligned openings in the members and Fig. 4 illustrates the device after it is manipulated to fastening position.

The fastener comprises a screw or "blind metal part" B, a nut or "non-blind metal part" having a head 15, and a sleeve or "blind head part" C. There is an integral head 11 on the inner or blind end of the screw and the sleeve C is disposed on the screw between that head and the nut which is threaded on the other end. In that condition, the assembly is inserted through the apertures in the members E and F to the position shown in Fig. 3.

The non-blind end of the screw B, as will appear from Fig. 3, is provided with two opposite flat sides to adapt it to be received in a suitable driving tool. By means of such tool, the screw is threaded along the inner thread on the nut, with an undercut bearing face on the head of the screw engaging the rearward end 30 of the sleeve to move the sleeve forwardly. During that movement, the other end of the sleeve is caused to expand and ride over a frusto-conical surface 14 on the nut and the sleeve is ultimately brought to a position compressed between the head of the screw and the inner surface of the member F as shown in Fig. 4 to secure the two members together. The screw is weakened by a circumferential groove at the inner end of the flattened portion so that continued driving by the tool results in that portion

breaking off from the screw after the fastener is tightened to a predetermined pressure.

Appellant discloses the composition and properties of metals to be used for various portions of the fastener as well as some dimensional relationships of the components. He also discloses a modified construction which differs from the Figure 3 and 4 construction primarily in that the bearing face on the inner or shank side of the head of the screw is inclined outwardly and rearwardly and the bearing face of the nut is not made frusto-conical as shown at 14 in Fig. 3 but instead is undercut similarly to the bearing face of screw head 11 in that figure. With the modified construction, the rear end portion of the sleeve is forced over the inclined surface of the screw head to make fastening engagement with plate F.

Claim 4, taken as illustrative, reads:

"4. In a high shear and load carrying blind fastener for use in attaching together at least two members a side of one of which is inaccessible or blind and having aligned openings therein of substantially uniform diameter with the possible exception of the accessible end which may be counterbored, a relatively non-ductile substantially homogeneous discrete internal or blind metal part having tensile strength of not less than about 140,000 psi and a ductility of about 15% to 45% and comprising a cylindrical shank provided with a thread, said blind part including a round head formed integral with the blind end of said shank the diameter of which head is approximately 150% of the diameter of said shank and substantially equal to the minimum diameter of the opening in said members, said head having an undercut bearing surface on its shank side, a projection forming a driving connection on the non-blind end of said shank connected thereto by a section of less strength than that of the minimum cross sectional area of said shank, a relatively non-ductile discrete external or non-blind metal part having a tensile strength of not less than about 140,000 psi and a ductility of about 15% to 45% threaded onto the threaded section of said shank of said blind part, said non-blind part comprising a cylindrical tubular-like body portion having an outside diameter substantially equal to the diameter of said head of said blind part, said body portion having a head formed integral therewith at the non-blind end thereof for engaging the accessible or non-blind side of said members and an axially extending frusto-conically shaped bearing surface on its other end inclined outwardly and towards the non-blind end of said internal part at an angle of approximately 19% to 21% [19° to 21°?], said head of said non-blind member being provided with a driving connection, and a relatively ductile discrete blind head metal part at least twice as sensitive to cold-working measured by increase in hardness as low carbon basic steel, said blind head part having a tensile strength of from about 50,000 psi to 125,000 psi and a ductility of about 40% to 76% and being in the form of a continuous cylindrical sleeve having an outside diameter substantially equal to the diameter of said head of said blind part and an inside diameter not substantially greater than the maximum thread diameter of said thread on said shank of said blind part, said blind head part being interposed on and closely conforming to said shank of said blind part between said bearing surfaces whereby the non-blind end of said blind head part adjacent to said external or non-blind part is expanded over said frusto-conically shaped bearing surface part to cold work the material thereof and form a blind head engaging the inaccessible side of said members upon said frusto-conically shaped bearing surface being

forced into said end of said blind head part when said blind part is rotated relative to the non-blind part in driving the fastener and said members thereby secured together by being embraced between blind and non-blind heads engaging opposite sides of said members said blind head of which is relatively hard but more ductile than said non-blind head."

It will be observed that claim 4 is directed to the form of the invention shown in Figs. 3 and 4 with the frusto-conical surface on the inner end of the nut or non-blind metal part. Claims 5 and 6 are specific to the modified form where such surface is on the head of the bolt. Claims 1 to 3 apparently are not limited to either form.

The references relied on by the board and examiner are:

La Torre    2,765,699    Oct.    9, 1956
Nelson    2,406,157    Aug. 20, 1946

La Torre discloses a blind bolt best shown in Figs. 1 and 3, reproduced below:

Fig. 1 shows the bolt upon being inserted through apertures in plate members 15 and 16 to be fastened together and Fig. 3 shows the assembly after it has been positioned to fasten the members together. It will be apparent that La Torre's structure, like appellant's, consists of three parts: a screw 10, a nut 11, and a sleeve 12. The parts are assembled in the same relationship as in appellant's fastener with tightening of the nut causing a frusto-conical surface on the end thereof to spread the collar to form a blind head. A bearing surface 28 on the bolt head 23 forces the blind end of the collar inwardly when the fastener is contacted. The screw includes an extension 25 for engagement by a tool, which extension is attached to the remainder of the screw by a weakened portion whereby the extension is twisted off when the torque reaches the value at-tained when the device is in fastening condition.

The Nelson patent shows a blind fastener adapted to pass through coinciding apertures in two members to secure them together. It comprises a bolt having a head at its blind end, said head having a frusto-conical surface flaring outwardly from the intersection of the head with the shank. Upon drawing the bolt up within a non-blind element, the frusto-conical surface forces a sleeve portion on the element outwardly to engage the surface of the inner member to fasten the two members together.

The ground of rejection of the claims is obviousness over the La Torre structure with Nelson relied on for a suggestion of the alternative structure of claims 5 and 6 where the frusto-conical surface over which the sleeve rides is on the bolt head rather than on the nut.

La Torre does not describe the specific dimensional relationships of the parts of his structure. Neither does he specify the metal or metals used for the parts or the tensile strength or ductility of the parts. It is the limitations in the claims as to those features on which appellant relies for patentability.

Appellant argues that the dimensional relationships and characteristics of the materials he specifies result in a bolt which has a high strength-to-weight ratio, resistance to failure under vibration and other desirable properties. In support of that contention, he has submitted affidavits of five persons experienced in the art. Those affiants testify to the high quality and performance of blind fasteners made by appellant's assignee and to highly successful and extensive use of the fasteners in the manufacture of airplanes. They characterize the fasteners as "superior to any blind fastener of which" one affiant "has knowledge" and as "the best obtainable high-strength blind fasteners, both from the standpoint of resistance to vibration and strength to weight ratio."

As to the dimensional aspects of the claims, the examiner considered the diameter of the head of the screw of La Torre to be shown as approximately 150 per cent of the shank diameter. He regarded selecting the particular angle of inclination of the frusto-conical surface on the screw head as ordinary engineering design work, while also taking the position that the angle called for by appellant is substantially shown in La Torre.

It was also the examiner's view that "the particular materials employed represent merely a selection from known materials having known characteristics with the selection being largely governed by the use which is made of the device." He further stated:

" * * * it seems clear * * * that the materials employed are all known and standard materials. Where it is necessary to have a ductile member such as 12 in La Torre it is not believed to be an act of invention [unobvious?] to select a material which has this property such as a steel material set forth * * * [in] the specification.

"In a like manner where a use is envisioned which will involve stresses in shear it would certainly be obvious to form the external or nut member of high shear strength material and this consideration is applicable to the bolt member also."

The board agreed substantially with the examiner's position and found the affidavits not to be persuasive of patentability.

Appellant emphasizes the dimensional relationships and characteristics of the materials recited in the claims and the high strength-to-weight ratio, resistance to failure under vibration, and other properties discussed in the affidavits. He urges that the 150 per cent diameter of the screw head relative to the shank is recognized as a departure from standard practice, stating that the head of a round head machine screw in sizes 6 to 12 is much greater than that recited in the claims.

As to claims 5 and 6, it seems plain to us that Nelson suggests modification of La Torre to provide the sloping bearing surface on the head of the screw instead of on the nut and appellant does not appear to contend otherwise. Accordingly, those claims present no further issue of patentability separate from claims 1 to 4.

In a reply brief,[1] appellant argues at length on the basis that the solicitor, in the brief for the Commissioner, attempts to show that the relationships between the diameters of the heads and shanks of the screw parts of fasteners referred to in a chart in appellant's application do not support the "approximately 150%"

---

1. A motion by appellant for leave to file a reply brief, submitted with such brief shortly before oral hearing in this appeal, is hereby granted and that brief has been considered in deciding the appeal.

limitation in the claims. He also seems to argue that it is improper to consider the drawings of the La Torre patent as disclosing any dimensional relationships of the parts. The invention in La Torre, he says, "is unrelated to any particular relationship between the diameters of the head and shank of the screw part."

We do not find that the solicitor attempted to raise an issue of whether appellant's application supports the "approximately 150%" limitation. Rather he referred to the specific head to shank diameters determined from appellant's chart to show that they departed from precisely 150% as an indication of the significance of the position taken by the examiner that the drawing of La Torre shows the head diameter of the screw shown therein to be "approximately 150 percent." That matter plainly goes to the real issue here, the rejection of the claims on the prior art.

As to that question, we are satisfied that the board did not err in holding the claims in issue to be unpatentable. The dimensional limitations include the "approximately 150%" relationship of the screw head to shank, and the requirement, in claim 4 only, that the frusto-conically shaped bearing surface be inclined at an angle of "approximately" 19 to 21 degrees. Clearly the size and slope of corresponding elements of the La Torre fastener are shown as of the same general order in the drawings and the drawings are properly to be considered as part of the patent disclosure. It is our opinion that the use of the same relative head size and slope by a person of ordinary skill in the art following that disclosure would be but an obvious matter of mechanical design, particularly in the absence of a showing of criticality as to function or results.

With respect to the recitations of properties of the materials from which the fastener is fabricated, we find no error in the analysis of the examiner quoted hereinabove. It is evident that the materials are all known and no reason is revealed for any doubt that a person of ordinary skill in the art would be aware of the stresses to which the various parts of La Torre's fastener would be subjected and capable of selecting materials to accommodate those stresses. It is our opinion, therefore, that the selection of suitable materials, such as those having the properties defined in the claims, is no more than a matter of obvious design choice for such a person.

No error is seen in the board's conclusion that the affidavits "are not persuasive of a patentable distinction of appellant's device over that of La Torre." While the affidavits express opinions as to the superiority of appellant's fastener, they do not make any factual comparison with other fasteners. Thus they do not show that either the dimensional relationships or the properties of the materials required by the claims are critical to the successful operation of the fastener.

For the foregoing reasons, the decision of the board is affirmed.

Affirmed.