**TRICO PRODUCTS CORPORATION**

v.

**ROBERK COMPANY.**

Civ. No. B–323.

United States District Court,
D. Connecticut.

Jan. 31, 1973.

Armand Cifelli, Wooster, Davis & Cifelli, Bridgeport, Conn., Edward A. Haight, Robert V. Jambor, Haight, Hofeldt & Davis, Chicago, Ill., for plaintiff.

Leo Nevas, Nevas, Nevas & Rubin, Westport, Conn., Albert C. Johnston, New York City, for defendant; Charles E. Temko, Harold Sacks, Temko & Temko, New York City, of counsel.

## RULING ON MOTION FOR SUMMARY JUDGMENT

BLUMENFELD, Chief Judge.

Trico Products Corporation, assignee of Emory W. Lenz and Anthony C. Scinta, instituted this action against the Roberk Company charging it with infringement of U.S. Patent No. 3,153,254 (hereinafter Lenz patent) issued to it on October 20, 1964, for an alleged invention entitled "Windshield Wiper."

The defendant denied infringement and counterclaimed for a declaration that the Lenz patent is invalid on two grounds: (1) that it is not non-obvious in view of the prior art; and (2) that its claims are overly broad. The court has jurisdiction of this suit under the patent laws of the United States. 35 U.S.C. §§ 271, 281 and 28 U.S.C. § 1338.

The defendant has moved for summary judgment. The file wrapper in the Lenz application, depositions, and prior art patents have been filed. The parties

have submitted briefs and have been heard in oral argument.

## Introduction

Charges in the complaint to the effect that the defendant had infringed by making and/or selling windshield wipers embodying the plaintiff's patent were later refined to a narrower charge of infringement by reason of defendant's business in wiper blade refill units.

The patent is for a replaceable blade assembly for use in automobile windshield wipers which can be inserted and removed from an associated wiper superstructure without the use of tools and without disassembling any parts of the superstructure. Although direct infringement of claims 5, 7 and 8 of the patent, and contributory infringement of claims 1–4 and 6, were alleged, this was particularized by claim 7.[1] Accordingly, claim 7 typifies the issue. It reads as follows:

"7. A refill unit for a windshield wiper comprising a wiping element, a backing strip for mounting said wiping element and a latch element on said backing strip secured against substantial relative longitudinal movement with respect to said backing strip, said latch element comprising a pair of legs resiliently connected to each other, said legs straddling a portion of said wiping element, at least one of said legs being provided with a notch therein forming a pair of opposing shoulders for receiving a claw of a wiper superstructure in resilient latching engagement between said pair of opposing shoulders, said legs being manually depressible to permit displacement of said notch from said claw."

It should be noted at the outset that, despite the breadth of the claim to a replaceable windshield wiper, the Lenz patent describes "all of the foregoing parts except the latch number 29" as

"being substantially of conventional production types." (Col. 2, lines 62–67). Thus, while the real necessity is to concentrate attention on the latch element, that may be more readily understood if preceded by a brief description of the other elements.

The "wiping element" is the rubber blade or squeegee, the lip of which has direct contact with the face of the windshield. It tapers outward from the lip to the head, but just below the head there are a pair of matching grooves in the opposite sides of the blade extending for its full length and leaving a flexible neck. The "backing strip" may be either two metal splines which nest into the grooves, stapled together at their ends, or a one piece elongated metal collar. The backing strip extends for the full length of the blade.

The "blade assembly," consisting of the wiping element, backing strip, and latch, is threaded through the "claws" of a holder at the end of the arm of the wiper superstructure to mount the blade into working position, leaving the lower portion and edge of the blade free to press on the surface of the windshield. The backing strip is flexible, vertically, against the windshield, but not transversely. However, since the claw does not clamp down on the blade assembly, but only slidingly and embracingly engages it, relatively free movement of the wiper blade in the plane substantially perpendicular to the face of the windshield is permitted. And, since the assembled blade, after being threaded through the claws, is only loosely located in its working position in the superstructure, some means of securing it in that position is necessary. The latch element serves that purpose.

## Infringement

The infringement issue here is presented by the defendant's contention that the latch structure in its refill unit

1. This came about through the plaintiff's response to defendant's Interrogatory No. 33, which required it to identify the accused devices and to list and apply to each of them the claims alleged to be infringed.

falls outside the bounds of the one claimed in the plaintiff's patent.

The manner in which the accused and the patented latch members are integrated into the refill unit is quite similar, and presents no contested issue. Both are struck out of resilient thin gauge, stainless steel. This resiliency enables them to function as spring clips. Both may be inserted at one end of the assembly, and both are two-legged in order to straddle the neck of the blade. The patented latch may be incorporated into the refill unit by sandwiching it between the body portion of the blade and the underside of the backing strip, or between the head portion of the blade and the topside of the backing strip. The accused latch has a special doubled-over structure at the top of its legs which fits over the end of the backing strip—thus the flat legs are sandwiched between the underside of the backing strip and the body portion of the blade, and the doubled-over part is sandwiched between the upper portion of the backing strip and the underside of the head of the blade. So much for the way in which the respective latches are incorporated into a refill unit.

Concern here is not with how the latch element, referred to by De Pew 2,983,945 as the "keeper means" and by Krohm 2,782,446 as the "locking means," is held to the backed blade as a sub-assembly but with how, thereafter, it latches the whole blade assembly to the superstructure.

To put it very simply, the latch element functions as a spring clip. The legs in the plaintiff's device, which spread a little too wide to freely slide through the inner width of the claw, are compressed together laterally by pressure of fingers on the tabs upturned at the outer side of the upper part of the legs and pushed through the claw until a "notch" in "at least one of said legs" is reached. At that point, the resilient legs are allowed to expand laterally and snap back to their original position so that the notch receives "a claw of a wip-

er superstructure in resilient latching engagement between said pair of opposing shoulders." The refill unit is easily removable in the same way.

Whether the defendant's accused device infringes upon the plaintiff's patented "keeper means" must be resolved in the context of the applicable law of patent infringement. I turn to that before considering whether the difference between them is sufficient to require a judgment of non-infringement.

■ In determining whether the defendant's accused device infringes, one of the fundamental tenets of the patent law is that nothing can infringe unless it trespasses on a claim. As Mr. Justice Brown explained in McClain v. Ortmayer, 141 U.S. 419, 425, 12 S.Ct. 76, 78, 35 L.Ed. 800 (1891),

". . . nothing can be held to be an infringement which does not fall within the terms the patentee has himself chosen to express his invention."

In other words, as succinctly summarized in Aro Mfg. Co. v. Convertible Top Co., 365 U.S. 336, 339 and n.4, 81 S.Ct. 599, 601, 5 L.Ed.2d 592 (1961), ". . . the claims made in the patent are the sole measure of the grant . . . ."

With respect to the latch element the claim is to a pair of legs "at least one of said legs being provided with a *notch therein forming a pair of opposing shoulders for receiving a claw* of a wiper superstructure *in resilient latching engagement between said pair of opposing shoulders . . . .*" (Col. 8, lines 35–39) (emphasis added).

In testing whether the accused device infringes, the claim in the plaintiff's patent must be restricted to the shape of the latch as quoted. The reason for this is not obscure if one refers to the file wrapper. That it was the quoted criticality which was exclusively and successfully urged before the patent examiner as the inventiveness after the examiner had issued a final rejection of all earlier

and broader claims is clear from the file wrapper at 49–63. The file wrapper indicates:

(1) On October 1, 1963, all the claims were rejected principally upon substantially identical prior art shown in the 1961 De Pew patent 2,983,945 which, as the patent examiner held "shows at 50 a latch member as claimed with the exception of the slot and projection" which were old in the cited 1957 Krohm patent 2,782,446.

(2) The applicant's attorney argued at length against the rejection by a paper filed December 30, 1963.

(3) In response, the examiner made the rejection "FINAL" on January 20, 1964 (file wrapper at 57–58), pointing out that De Pew's structure fully met some of the claims and that the others would be obvious to a person having ordinary skill in the art. The rejection specifically noted that "De Pew clearly shows a notch at 56."

(4) Then, by an amendment [2] made after an ex parte oral interview with the examiner, the nature of which does not appear in the record, the above noted limitation was introduced into all of the claims; and it was argued that, because of their recitation, as amended, of a leg notch forming a pair of opposing shoulders which resiliently interlock with the claw of a superstructure, their application had been caused to "distinguish patentably over De Pew."

Leaving aside for the moment the question of whether the arguments made to secure allowance of the claims were soundly based, it is abundantly clear that the limitation then introduced into the claim, to a particular form of a two-shouldered notch in a leg of the latch element for engaging a claw between the opposing shoulders, was advanced in order to secure, and was a prerequisite to the allowance of, the application.[3] It was a sine qua non to the issuance of the Lenz patent.

Where the limitation in the shape of the notch was pressed as the distinction from prior art in order to obtain the patent, it cannot be avoided, or expanded to cover what it ruled out of the previous claim, by resort to the doctrine of equivalents. It does not matter that the claim given up was not specifically directed to the device which is now accused as an infringement.

"It is, of course, well settled that an invention is construed not only in the light of the claims, but also with reference to the file wrapper or prosecution history in the Patent Office. Hogg v. Emerson, 11 How. 587, 13 L. Ed. 824 (1850); Crawford v. Heysinger, 123 U.S. 589, 8 S.Ct. 399, 31 L. Ed. 269 (1887). Claims as allowed must be read and interpreted with reference to rejected ones and to the state of the prior art; and claims that have been narrowed in order to obtain the issuance of a patent by distinguishing the prior art cannot be sustained to cover that which was previously by limitation eliminated from the patent. Powers-Kennedy Co. v. Concrete Co., 282 U.S. 175, 185–186, 51 S.Ct. 95, 99, 75 L.Ed. 278 (1930); Schriber Co. v. Cleveland Trust Co., 311 U.S. 211, 220–221, 61 S.Ct. 235, 85 L.Ed. 132 (1940)." Graham v. John Deere Co., 383 U.S. 1, 33, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

See also, Schmidinger v. Welsh, 383 F.2d 455, 464–465 (3d Cir. 1967), cert. denied, 390 U.S. 946, 88 S.Ct. 1031, 19 L. Ed.2d 1134 (1968); Ling-Temco-Vought, Inc. v. Kollsman Instrument Corp., 372 F.2d 263, 270 (2d Cir. 1967); Mastini v. AT&T, 369 F.2d 378, 379 (2d Cir. 1966), cert. denied, 387 U.S. 933, 87 S.Ct. 2055, 18 L.Ed.2d 994 (1967); Warner & Swasey Co. v. Held, 287 F. Supp. 404, 412 (E.D.Wis.1968), aff'd, 413 F.2d 229 (7th Cir. 1969); Uncas Mfg. Co. v. McGrath-Hamin, Inc., 265 F.Supp. 1008, 1017–1018 (D.R.I.1967).

---

2. Before being so limited by amendment, the application claims called simply for "a notch" in at least one leg for receiving a claw. (See claim 17 in file wrapper at 37).

3. All of the other claims as well were amended to so describe the notch.

■ Having defined the bounds of the claim in the Lenz patent, the next point to be considered is whether the accused latching means structure falls within those bounds. The Lenz latch element is a simple device, easily understood without benefit of technical expertise. Upon ordinary inspection of defendant's spring clips (exhibited in the Lopez affidavit at 4(B)), it is readily apparent that the two-legged spring clip used as a part of defendant's wiper blade refill does not have in either of its legs a notch forming a pair of opposing shoulders for receiving a claw of a wiper superstructure in resilient latching engagement between leg notch shoulders. Protruding outwardly at the end of each leg of defendant's clip, there is a blunt lug which in use is passed through a claw of a superstructure to engage the claw—at its back side, as in De Pew. Nothing in either leg of defendant's clip except the end lug takes any part in latching a claw. While the lug might be regarded as providing one shoulder of a "notch" (constituted by the right-angled corner where it protrudes from the leg), even in this interpretation there plainly is no notch in the leg "forming a pair of opposing shoulders for receiving a claw . . . in resilient latching engagement between said pair of opposing shoulders." (Lenz patent, *supra* at

1149). It is a long established principle that, where the form or shape of a device is the substance of a claimed invention, the claim must be restricted to the form described in it and cannot be extended to embrace a new form which is a substantial departure. Shaw v. E. B. & A. C. Whiting Co., 417 F.2d 1097, 1106 (2d Cir. 1969), cert. denied, 397 U.S. 1076, 90 S.Ct. 1518, 25 L.Ed.2d 811 (1970). See also, Reiner v. I. Leon Co., 324 F.2d 648 (2d Cir. 1963).

A claw engaged behind the end lugs (55) of the Roberk refill clip is free to slide a considerable distance[4] along the leg (53) until this claw or the end proper of the superstructure butts against an upper portion of the clip which lies over the refill splines above the legs. (Lopez affidavit at Exhibit C, figure 1). This abutting upper portion plainly is not a shoulder of a pair of opposing shoulders formed by a notch in a leg of the clip.[5]

■ The plaintiff argues that "[t]his is a vain attempt to distinguish the notch of the latch of the accused structure, the shoulders of which are the ends of the top portion of a doubled-over piece of metal and the opposing end of a cut-out on the lower portion." It further contends that "[n]o such distinguishing limitation appears in the claims, nor must they be so construed."

4. Lenz' claim 1 is that the notch resiliently interlocks with at least one claw "to thereby confine the longitudinal movement of said latch member and therefore confine longitudinal movement of said backing strip relative to said superstructure . . ." (Col. 7, lines 18–23).

5. The difference between the accused Roberk clip and the claim in the plaintiff's patent is of greater dimension than between the patented and alleged infringing element in Reiner v. I. Leon Co., *supra*, 324 F.2d at 651. There, the use of a straight spring in the accused hair clip instead of a bow-shaped spring as claimed in the patent was held so clearly not to infringe as to require reversal of a contrary finding of infringement entered on a master's report. Even though the doctrine of file wrapper estoppel was not applicable to limit the scope of the claim, the court nevertheless observed that the plaintiffs in *Reiner* could not have effectively argued

that the doctrine of equivalents was applicable, for the "range of equivalents allowed is small when the advance is a small one in a crowded field," and "the prior art that limits the scope of plaintiffs' claim also prevents a finding of equivalence." In view of the fact that the hair clips were commercially indistinguishable, the court observed at 651:

"(I)t may seem that the difference in spring construction is so slight that a finding of non-infringement is inequitable." But in weighing this against the far more important policy of the law forbidding unwarranted restraints on competition, the court said:

"Because the policy of the law is to construe strictly the grant of a patent monopoly, there is nothing wrong or immoral in any sense for a manufacturer deliberately to create an article on the basis of the prior art in order to avoid infringement." *Id.* (citation omitted).

(Memorandum in Opposition to Defendant's Motion for Summary Judgment at 16). The court disagrees. The defendant's latch does not have the same notch structure as Lenz. Since all of this "would even have been obvious to ordinary laymen of modest intelligence" there is no need for expert testimony. Monaplastics, Inc. v. Caldor, Inc., 378 F. 2d 20, 21 (2d Cir. 1967).

A claim to anything more than a "notch forming a pair of opposing shoulders for receiving a claw" was given up in the patent office (file wrapper at 49–63) and cannot now be used to bring into the patent something not there. It is immaterial whether the examiner was right or wrong in rejecting the earlier claims. Exhibit Supply Co. v. Ace Patents Corp., 315 U.S. 126, 137, 62 S.Ct. 513, 86 L.Ed. 736 (1942).

Accordingly, I find that the Lenz patent claim clearly does not read upon or cover the Roberk wiper blade refills which plaintiff is attempting to suppress by this suit, and hold that the Roberk refills do not infringe the Lenz patent.

### Invention

The difference between the latch element in the Roberk wiper blade assembly and that in the Lenz patent is one issue; that has been measured against the bounds of the patent claims as limited by the rule of file wrapper estoppel and found not to infringe. Whether the Lenz patent is valid [6] will be considered in light of the broader concept of an applicant having to establish the "non-obvious" nature of the "subject matter . . . patented" to a person having

ordinary skill in the pertinent art. 35 U.S.C. § 103.[7] Before measuring the Lenz claims against the prior art, it will be helpful to focus attention upon those particular words inserted in the claims which seem to have finally persuaded the patent examiner that the Lenz latch was patentable over De Pew.

What happened in the patent office until the examiner issued a final rejection of all claims of the applicants as being unpatentable over the prior art can be traced more or less in the file wrapper. Thereafter, there was an oral interview with the patent examiner following which the applicants filed amendments to the claims which apparently resulted in the granting of the patent. While what was said at the interview is not in the record, the effect of that interview is clearly indicated by the remarks of counsel, accompanying his submission of the amendments, which began:

> "Applicant acknowledges with appreciation the courtesy extended by the Examiner in granting an interview. . . . In accordance with the above mentioned interview, Claims 9 and 13 through 18 have been amended. Claim 6 has been rewritten to incorporate the clarifying language suggested by the Examiner and to provide a clean copy." (File wrapper at 61).

The "clarifying language" which was inserted described the notch in the leg of the latch as a notch "forming a pair of opposing shoulders for receiving a claw of a wiper superstructure . . . between said pair of opposing shoulders . . . ." Claim 7, col. 8, lines 36–39.[8] I find it difficult to un-

---

6. Consideration of the validity of the Lenz patent is required so that the public interest will be adequately protected. Beckman Instruments, Inc. v. Chemtronics, Inc., 428 F. 2d 555, 557 (5th Cir.), cert. denied, 400 U.S. 956, 91 S.Ct. 353, 27 L.Ed.2d 264 (1970).

7. 35 U.S.C. § 103 provides:
   "Conditions for patentability; non-obvious subject matter
   "A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this

title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

8. Claim 17, which on October 1, 1963, had been "rejected as obviously fully met by De Pew," file wrapper at 50, and "again reject-

derstand in what way this rhetoric (describing the sides of the notch [9] as "opposing shoulders") clarified any possible earlier ambiguity. If this particular shape of the notch was such a vital element, it is surprising that all mention of it had been completely omitted until that time. There is no place in the specifications [10] outside the amended claims which describes the notch other than simply as a "notch." See 37 C.F.R. § 1.75(d).[11] Nor is there any reference in the drawings to the part of the notch, cf. 37 C.F.R. § 1.84(f), which is said to constitute a shoulder. On analysis, it was apparently only this verbal embellishment, rather than any new distinction in the precise mechanical behavior of the notch (over the prior art the examiner had earlier relied on to reject the claims), which persuaded him to reverse his earlier decision. Under these circumstances, the ordinarily logical basis for attaching a presumption of validity to the patent is substantially weakened. See Lorenz v. F. W. Woolworth Co., 305 F.2d 102, 105 (2d Cir. 1962).

From this discussion, it is clear that the heart of the Lenz invention rests only upon a small and technically immaterial difference in the shape of the notch in a leg of a latching element which was old in the art. The plaintiff contends here, as it did in the patent office, that there are two levels at which the Lenz latch is patentably distinguishable over De Pew.[12] In summary, its contention is that the Lenz latch is new not only because De Pew does not show a latch with "opposing shoulders," but also because the Lenz notch enables a single spring clip to be used instead of two.

In ascertaining exactly how new Lenz' "new latch" was, the inquiry which the patent office and the courts must make as to patentability must be beamed with greater intensity on the requirements of § 103. Thus, in determining the character of the Lenz latch as a stage in the progress of the latching art, the test of non-obviousness must be strictly applied. Graham v. John Deere

---

ed as fully met by De Pew" on January 20, 1964, file wrapper at 58, became claim 7 and was allowed when it was rewritten by inserting the italicized description of the "notch therein *forming a pair of opposing shoulders* for receiving a claw of a wiper superstructure in resilient latching engagement *between said pair of opposing shoulders* . . . ." See file wrapper at 60, 38.

9. A primary definition of a notch is "a V-shaped indentation or hollow (as in a surface or edge)." Webster's Third International Dictionary (unabridged).

10. The rules of practice in the patent office require a detailed description and specification of the invention. 37 C.F.R. § 1.71(a) provides:

"The specification must include a written description of the invention or discovery and of the manner and process of making and using the same, and is required to be in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which the invention or discovery appertains, or with which it is most nearly connected, to make and use the same."

11. 37 C.F.R. § 1.75(d) provides:

"(1) The claim or claims must conform to the invention as set forth in the remain-

der of the specification and the terms and phrases used in the claims must find clear support or antecedent basis in the description so that the meaning of the terms in the claims may be ascertainable by reference to the description.

"(2) See §§ 1.141 to 1.146 as to claiming different inventions in one application."

12. After the oral interview which resulted in the agreed "clarifying language," the following appears:

"Claims 17 and 18 (which subsequently became claims 7 and 8 of the patent) distinguish over DePew in setting forth a refill unit provided with a latch element including a pair of legs. The legs are provided with a notch forming a pair of opposing shoulders for receiving a claw of the wiper superstructure between the pair of opposing shoulders. As set forth above, DePew shows no such structure. By utilizing this pair of opposing shoulders for interlockingly receiving a claw, a single clip can be used instead of two clips.

"An amendment incorporating the terminology required to properly distinguish the claims from the reference was not earlier presented because consultation with the Examiner was required to arrive at the precise language utilized." (File wrapper at 62–63).

Co., *supra*, 383 U.S. at 17, 86 S.Ct. at 694:

"... Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. ..."

■ To establish that there is not a non-obvious difference between the prior art and Lenz'"invention," it ought suffice to discuss only the prior art patent of De Pew cited as a reference by the patent office examiner in the prosecution of Lenz' application. The De Pew patent must be considered as a whole, Application of Uhlig, 376 F.2d 320, 323, 54 CCPA 1306 (1967), and all of the disclosures in it must be evaluated for what they fairly teach one of ordinary skill in the art. Application of Boe, 355 F.2d 961, 965, 53 CCPA 1079 (1966). This includes the drawings,[13] which are properly considered to be part of the patent disclosure. Cf. Application of Hopkins, 342 F.2d 1010, 52 CCPA 1343 (1965). When that is done, the assertedly critical definition of the notch in Lenz' latch loses its force. In addressing himself to the latch element in the refill unit, De Pew, contrary to the contention of Lenz, told the world what he did and how it worked. De Pew's wiper blade assembly is clearly "provided with a latch element including a pair of legs" in the form of element 50 shown in figs. 4, 6 and 7 and described in lines 44–47 of col. 3 of De Pew as "keeper means 50 ... composed of a U-shaped body portion having legs 51, 52 joined together by a bridge 53 ...." Here, De Pew clearly states (as is plainly observable from fig. 4 of his drawing) that "[t]he legs 51, 52 each have a notch 56 cut into the outer side edges 57 thereof ...." (Col. 3, lines 52–

53). Also, De Pew spells out the presence of opposing shoulders formed by his leg notches by stating that the lugs (60) on the ends of the legs form "one wall of the notches 56" (col. 3, lines 67–68) and that each leg "is cut at a bias to produce a ramp ... to provide a tapered entry into or out of the notches 56." (Col. 4, lines 5–8). Figure 6 of De Pew plainly shows a claw (42) received in each leg notch between these opposing side walls of the notch. As the refill is assembled in the superstructure, De Pew explained, "The first pair of claws 42 ... will engage the cam surfaces 62 on the keeper 50 and will force the legs 51, 52 inwardly ... until said claws 42 clear the ends of the legs 51, 52 whereupon further movement ... will drop said claws 42 into the notches 56 in the legs 51, 52." (Col. 4, lines 37–48). The claws "drop into nested relationship in the notches 56 ... (w)hereupon the superstructure 13 is assembled ...." (Col. 4, lines 71; Col. 5, line 2). What De Pew described as a ramp (63) in his notch could have been denominated a sloping shoulder with as much accuracy of meaning as Lenz conveyed in describing the vertical sides of its notch as opposing shoulders. If the "latch element" of the Lenz wiper blade assembly is a step forward because the notch in its leg forms "a pair of opposing shoulders," it was achieved without the exercise of any inventiveness. The evidence is clear and convincing, General Tire & Rubber Co. v. Firestone Tire & Rubber Co., 349 F. Supp. 345, 350 (W.D.Ohio 1972), that with the De Pew patent before him, it would have been obvious to one having ordinary skill in the art to square up the slope of the ramp (63) in De Pew's notch to a 90° angle, which is all that Lenz did.

■ De Pew made no secret of the full utility of his "keeper" when used as a single latching means. When all of the disclosures in the De Pew reference

---

13. Relevant drawings from the patents discussed are reproduced for explanation and description in the appendix.

are considered, it is clear that he contemplated the use of but one keeper (50) at only one end of the refill unit. His claim 3 calls for keeper means on "at least one end portion of the backing means" (col. 6, lines 10–13); his claim 5 calls for "at least one of said claw means" to co-act with keeper means. (Col. 6, lines 47–48). Accordingly, and also because there is no limitation at all in the claims in suit to a structure using a single clip instead of two, there was no merit in the applicants' argument, made in order to secure the Lenz patent, that "[b]y utilizing this pair of opposing shoulders for interlockingly receiving a claw, a single clip can be used instead of two clips." (File wrapper at 62). If there is any advantage in choosing the Lenz connector over De Pew's it is too trifling to merit a patent.

If more is needed to completely erode the already weakened presumption of § 282,[14] as well as to buttress the conclusion that the Lenz latching element would have been obvious to one skilled in the art, it can be found in patents neither cited nor considered in the prosecution of the application of the Lenz patent. See Reeves Bros. v. U. S. Laminating Corp., 417 F.2d 869, 872 (2d Cir. 1969); Monroe Auto Equip. Co. v. Superior Indust., Inc., 332 F.2d 473, 481 (9th Cir.), cert. denied, 379 U.S. 901, 85 S.Ct. 190, 13 L.Ed.2d 175 (1914).

The use of a spring clip to connect one thing to another cuts across a much wider area of mechanical art than the attachment of a wiper blade to a superstructure. For example, the 1954 Lambert patent 2,681,719, as disclosed by the specification, is stated to be suitable for a variety of different connections. It clearly shows a two-legged spring clip or connector having leg formations with square notches in each leg substantially identical to those of the "latch element" of Lenz, including tapered leg ends for easy entry into another part and square leg notches for positive latching engagement with it.[15] Another clear example is the securing device of the 1939 O'Callaghan patent 2,169,708 which claims "(a) device for securing one member to another . . . ." (Col. 3, lines 16–17). Still another such notched two-legged clip or connector having two-shouldered leg notches and inclined leg ends is shown in the 1958 German patent DAS 1 047 040, as used for releasably attaching a windshield wiper blade assembly to the wiper arm.

### Overclaiming

Having concluded that the patent in suit is invalid for not meeting the test of § 103, the defendant's additional contention that it is also invalid for overclaiming is considered only briefly.

Claim 7 is for "[a] refill unit for a windshield wiper comprising a wiping element, a backing strip . . . and a latch element on said backing strip . . . ." for connecting the unit releasably with a claw of a wiper superstructure. The constituent elements were old; they were well known; and their combination was not a new one in this particular art. To those skilled in the art, the use of those old elements in combination was not non-obvious. Anderson's-Black Rock, Inc. v. Pavement Salvage Co., 396 U.S. 57, 61, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969); A & P Co. v. Supermarket Equip. Corp., 340 U.S. 147, 151, 71 S.Ct. 127, 95 L.Ed. 162 (1950). That these elements, used in combination as a wiper blade assembly, were old is clear from the references cited in the file of the Lenz patent, col. 8, lines 60–65. The prior art patents of Krohm and Anderson, as well as De

---

14. 35 U.S.C. § 282 in relevant part provides: "A patent shall be presumed valid. The burden of establishing invalidity of a patent shall rest on a party asserting it . . . ."

15. This reference is not from such a remote or non-analogous art that students of connecting devices would not have looked there for help. Cf. Graham v. John Deere Co., supra, 383 U.S. at 35, 86 S.Ct. 684, 15 L. Ed.2d 545; General Metals Powder Co. v. S. K. Wellman Co., 157 F.2d 505 (6th Cir. 1946), cert. denied, 329 U.S. 812, 67 S.Ct. 632, 91 L.Ed. 693 (1947).

Pew, show wiper blade refill units releasably connected to wiper superstructures by means of releasable spring clips or connectors engaged with the backing strips of the sub-assembly and with claws or end portions of the superstructure. Indeed, the Lenz patent itself describes " . . . all of the foregoing parts (of the wiper blade sub-assembly) except the latch member 29 being substantially of conventional production by types normally made to be held in permanent assembled relationship." (Col. 2, lines 65–68).

The latch element is described in the specification as "an improved latch structure" and a "particular latch." (Col. 1, lines 16, 19–20). Although the statute, 35 U.S.C. § 112, requires that in an application for a patent "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention," the Lenz patent contains no claim for the asserted "improved latch structure" or for the "particular latch" of the present invention, as such.

■■■ It is clear from the patent itself that the claims comprehend more than the invention.

> "While the cases more often have dealt with efforts to resort to specifications to expand claims, it is clear that the latter fail equally to perform their function as a measure of the grant when they overclaim the invention." Graver Mfg. Co. v. Linde Co., 336 U.S. 271, 277, 69 S.Ct. 535, 539, 93 L.Ed. 672 (1949).

By claiming the old with the new on the assumption that the new improved latch structure was patentable,

> "[t]he question then is whether, by this method, the patentee, by improving one element of an old combination whose construction and operation is otherwise unchanged, may, in effect, repatent the old combination by reclaiming it with the improved element substituted for the old element. That this cannot be done is shown by numerous cases in this and other federal courts." Bassick Mfg. Co. v. Hollingshead Co. and Rogers v. Alemite Corp. (decided together), 298 U.S. 415, 425, 56 S.Ct. 787, 791, 80 L.Ed. 1251 (1936) (footnote omitted).

The situation here is markedly apposite to that in Thomas & Betts Co. v. Steel City Elec. Co., 122 F.2d 304, 306 (3d Cir. 1941), where the court stated:

> "The only thing that the patentee has revealed which presents any novelty is the notched connector, which, so far as the improvement therein (i. e. the notches) is concerned, performs no new function in combination with the old elements. The patent seeks, therefore, to extend its monopoly to more than the patentee invented and, as a consequence, is invalid."

In reaching this result, that court relied extensively on the analysis in Lincoln Co. v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 664, 82 L.Ed. 1008 (1938), where the Court stated:

> "As we said of Gullborg in the Rogers case, having hit upon this improvement *he did not patent it as such but attempted to claim it in combination with other old elements which performed no new function in his claimed combination. The patent is therefore void as claiming more than the applicant invented. . . . And the improvement of one part of an old combination gives no right to claim that improvement in combination with other old parts which perform no new function in the combination."* (Footnote omitted) (emphasis added).

Since the Lenz patent attempts to monopolize far more than the improved latch structure it discloses, it is invalid under the rule against overclaiming.

### Conclusion

There being no genuine issue as to any material fact the defendant is entitled to judgment in its favor on the complaint, and to judgment on the counterclaim declaring that U.S. Patent No. 3,153,254 is invalid.

Let judgment enter accordingly, with costs to the defendant.

So ordered.

APPENDIX

LAMBERT CONNECTOR

DE PEW REFILL KEEPER

O'CALLAGHAN SECURING DEVICE

LENZ ETAL FIG. 3 REFILL LATCH

AVOG WIPER CONNECTOR
DAS 1 047 040

LENZ ETAL FIG. 15 REFILL LATCH

ROBERK REFILL CLIP

May 16, 1961     W. G. DE PEW     2,983,945

WIPER BLADE ASSEMBLY

Filed March 12, 1958

Fig.-1

Fig.-2

Fig.-3

Fig.-4

Fig.-5

Fig.-6

Fig.-7

INVENTOR.
WILLIAM G. DePEW
BY
W. E. Racktenwald
ATTORNEYS

Oct. 20, 1964     E. W. LENZ ETAL     3,153,254

WINDSHIELD WIPER

Filed July 19, 1960         2 Sheets-Sheet 1

Fig. 1

Fig. 8

Fig. 2

Fig. 3

Fig. 6

Fig. 4

Fig. 5

Fig. 4A

Fig. 7

INVENTOR.
EMORY W. LENZ and
BY ANTHONY C. SCINTA

Bean Brooks Buckley + Bean
ATTORNEYS